[L.A. No. 30295. In Bank. Nov. 13, 1974.]

GEORGE JAVOR, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## Counsel

Erwin Sobel and Leonard Sacks for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

## Opinion

**SULLIVAN, J.**—Plaintiff George Javor appeals from a judgment of dismissal[1] entered upon an order sustaining, with leave to amend, the general demurrer of defendant State Board of Equalization to plaintiff's complaint, plaintiff having thereafter declined to amend.

The genesis of this lawsuit is found in the repeal by the Congress of the United States on December 11, 1971, but retroactively to August 15, 1971, of the federal manufacturers' excise tax imposed on the sale of specified new motor vehicles and accessories. Congress at the same time required the manufacturers to refund the federal tax to those persons who had purchased the vehicle or accessories during the above period of approximately four months. California purchasers, however, had also paid California sales taxes calculated on the total sales price of the vehicles and accessories, which sales price included the above federal tax. The refund of the federal tax, therefore, effected a *pro tanto* reduction of the total sales price, thereby giving rise to the claim that a greater sales tax

---

[1]The court entered an order of dismissal under the provisions of Code of Civil Procedure section 581, subdivision 3, which constitutes a judgment. (Code Civ. Proc., § 581d.)

had in fact been paid by the above purchasers than was eventually found to be due.

Plaintiff George Javor, individually and on behalf of all consumer-purchasers of certain new motor vehicles and accessories in California during the above four-month period, brought the instant class action for money due and an accounting against the State Board of Equalization (Board), the State of California, Hamilton Buick Incorporated (Hamilton) and all California retailers of such new vehicles and accessories.[2]

The complaint sets forth two causes of action. The first cause alleges in substance as follows: Plaintiffs are consumer-purchasers in California of new passenger automobiles, new passenger automobile trailers and semi-trailers suitable for use in connection with passenger automobiles, new lightweight trucks with a gross weight of less than 10,000 pounds, accessories on said trucks and new buses weighing under 10,000 pounds during the period from and including August 15, 1971, to and including December 11, 1971, from defendant retailers doing business in California during said period. This class of plaintiffs consists of approximately 500,000 persons or more. It is impractical to bring all members of the class before the court because they are not now known to plaintiff Javor, they are too numerous to be individually joined, it would be too great a burden on each individual plaintiff in view of the amount claimed by each, and the entire class can be correctly ascertained only from the records of defendants.

Defendant retailers are too numerous to be brought before the court but as a class represent a common interest of law and fact. Only through their records, can the names of the plaintiff class be ascertained. Defendant retailers class may be ascertained from the records of the Board. Unless they are sued as a class, plaintiff purchasers will be forced to bring a multiplicity of actions and plaintiff Javor will be without an adequate remedy at law. Defendant Hamilton is one of defendant retailers.

The purchase price of the above-mentioned vehicles and equipment purchased by plaintiffs from defendant retailers during the above period included the federal manufacturers' excise tax then imposed by federal law.[3] During said period, California law[4] imposed on defendant retailers a sales and use tax based on the gross receipts of said retailers, which in-

---

[2]The record discloses that the Board is the only defendant either served with summons or appearing in the action.

[3]Imposition of the tax was pursuant to section 4061 of the Internal Revenue Code (see 26 U.S.C. § 4061) which is set forth at length in the complaint.

[4]See Revenue and Taxation Code section 6001 et seq. Hereafter, unless otherwise indicated, all references are to the Revenue and Taxation Code.

cluded within its base, any federal manufacturers' excise tax. Pursuant to such law[5] defendant Board collected from defendant retailers on the sale of the above-mentioned vehicles and equipment to plaintiffs a 5 percent sales tax in certain counties and a 5½ percent sales tax in certain other counties. Pursuant to law[6] defendant retailers collected from plaintiff consumers and the latter paid to said retailers the above sales tax. Said tax included 5 percent or 5½ percent (according to the particular county) of the federal excise tax. Defendant retailers have paid said sales tax to the Board, or have retained it, or owe it to the Board.

The United States Internal Revenue Act of 1971 (Pub.L. 92-178, § 401), effective December 11, 1971, provides for consumer refunds of the 7 percent excise tax charged on new passenger automobiles and automobile trailers during the period from August 15, 1971, to December 11, 1971, and of the 10 percent excise tax on new lightweight trucks and equipment and new buses during the period from September 22, 1971, to December 11, 1971. These refunds have been received by plaintiff purchasers.

Under the authority of section 7051, defendant Board has promulgated rules contained in title 18, California Administrative Code, section 1617, subdivision (d) which provide: (1) that repayment of the federal excise tax by the manufacturer to the retailer shall be regarded for sales tax purposes as a reduction of the retailer's cost of goods sold; and (2) that repayment of said tax by the manufacturer to the consumer will be regarded as a price adjustment, that taxable gross receipts of the retailer will be reduced accordingly and that the sales tax will be refunded to the retailer provided he also repays to the consumer the amount collected from him as sales tax reimbursement.[7]

The sales and use tax charged on the above sale of vehicles and equipment was collected without crediting plaintiff with the refunded federal

---

[5] Sections 6011-6012.

[6] Section 6052.

[7] Section 1617, subdivision (d) which is set forth at length in the complaint states: "(1) Repayment by Manufacturer to Retailer. When a manufacturer receives a refund of federal excise tax and repays the amount of the tax to the retailer pursuant to requirements of federal law, the repayment to the retailer will be regarded for sales and use tax purposes as a reduction of the retailer's cost of goods sold.

"(2) Repayment to Customer. When a manufacturer receives a refund of federal manufacturers' excise tax and repays the amount of the tax to the consumer either directly or through the retailer pursuant to requirements of federal law, the repayment to the consumer will be regarded for sales and use tax purposes as a price adjustment. Taxable gross receipts of the retailer for the period in which the repayment is made to the consumer will be reduced accordingly, and sales tax previously paid by the retailer on the amount will be refunded to the retailer, provided he also repays to the consumer the amount collected from him as sales tax reimbursement."

excise tax originally calculated in the entire sales price. On information and belief plaintiff alleges that defendants, and each of them, are now holding and have not refunded to plaintiff, any portion of the sum equal to 5 percent or 5½ percent of the refundable federal excise tax. Defendant retailers are under no statutory obligation to claim any refunds from the Board for the benefit of plaintiff and have no financial interest in doing so. Defendant Board is under no statutory obligation to voluntarily refund said taxes to plaintiffs and has no financial interest in doing so.

It would require a suit by each member of plaintiff class individually to compel defendant retailers to file a claim with defendant Board for a refund of the erroneously collected tax. Such demands would result in a multiplicity of actions. The amount due each member of the class is relatively small and when compared with the costs of suit, would discourage individual legal action. Unless this class action is permitted defendant Board and defendant retailers will be unjustly enriched at the expense of plaintiff class.

Defendant Board, as a constructive trustee now holds the monies due and owing plaintiff class which on information and belief is in excess of $10,000,000.

The second cause of action by plaintiff George Javor individually, after incorporating by reference the allegations of the first cause of action pertaining to the inclusion in the sales tax base of the federal manufacturers' excise tax and to the subsequent refunding of the latter tax, alleges in substance as follows: During the four-month period above mentioned,[8] plaintiff purchased a new Rolls Royce automobile from defendant Hamilton for $18,500. This sum included the federal excise tax in the sum of $1,195, which was refunded to plaintiff. Defendant Board collected and received from Hamilton 5½ percent of the total sales price of the automobile. There is now due plaintiff 5½ percent of the sum of $1,195 or $65.72 as erroneously collected sales tax. Plaintiff has made a demand on Hamilton for a refund of $65.72 but has not received it.

As to the first cause of action, plaintiff prays for the following relief: judgment in an amount in excess of $10 million, according to proof; that defendant Board notify defendant retailers of the pending action; that defendant retailers produce all records covering all sales consummated between August 15, 1971 and December 11, 1971 of the relevant auto-

---

[8]We accept for the present plaintiff's representation that the date of sale alleged as February 23, 1971 (and thus outside the four-month period) is a typographical error and should have been September 23, 1971.

mobiles and trucks; that defendant Board deposit the monies due and owing with the court; that defendant retailers deposit any refunds collected from defendant Board but not yet paid to plaintiffs and that the court notify each member of plaintiff class of their right to the refund.

As to the second cause of action, plaintiff prays for judgment in the sum of $65.72.

Defendant Board filed a general demurrer to the complaint asserting that each of its two stated causes of action fails to state facts sufficient to constitute a cause of action against the Board. The demurrer was sustained with leave to amend. Plaintiff elected to stand on the complaint and an order of dismissal was entered. This appeal followed.

We shall examine the complaint for its legal sufficiency according to well settled principles governing our review of a ruling on demurrer which we deem it unnecessary to restate here. (See *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; and cases cited in the foregoing.) In addition, as will appear *infra*, we shall refer to relevant material contained in publications of state offices or agencies which was brought to the attention of the trial court and presumably judicially noticed. (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 836, fn. 3 [48 Cal.Rptr. 481, 409 P.2d 481]; see Evid. Code, § 452, subd. (c).) ▮ We take judicial notice of these matters since they were properly noticed by the trial court (Evid. Code, § 459, subds. (a) and (b)) and since it is settled that in determining the sufficiency of a complaint against demurrer a court will consider matters that may be judicially noticed. (*Serrano* v. *Priest, supra,* 5 Cal.3d 584; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 716.)

We first dispose of a preliminary matter. The record and the briefs on appeal disclose that although the Board attacks the legal sufficiency of the complaint, it does not assert that the complaint is deficient because it does not contain the necessary elements of a class action. (Cf. *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 703.) Under the circumstances, suffice it to say after an examination of the complaint that it states sufficient facts to constitute a class action under section 382 of the Code of Civil Procedure since there is (1) "an ascertainable class" and (2) "a well defined community of interest in the questions of law and fact involved affecting the parties to be represented." (*Daar* v. *Yellow Cab Co., supra,* at p. 704; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808-810 [94 Cal.Rptr.

796, 484 P.2d 964].)    ■    The complaint before us alleges an ascertainable class of multitudinous consumer-purchasers of the described vehicles during the approximate four-month period, all of whom according to later developments have paid a sales tax based on the amount of the refunded federal excise tax and now no longer entitled to be retained by the state. The exact amount of this sales tax overage can be easily ascertained from the books and records of the retailers. The questions of law and fact are common to all members of the class. If a class suit were not permitted, a multiplicity of actions will be necessary in order to effectuate recovery by the individual purchasers. Since in many instances, the small amount involved may discourage an individual action as economically impractical, the state would be unjustly enriched, if a class suit were not permitted. (Compare *Daar, supra,* at pp. 713-715.)

We turn to the merits. Essentially the positions of the parties are as follows. Plaintiffs contend that since the monies representing the sales tax overage rightfully belong to them, since the Revenue and Taxation Code provides no procedure by which they can claim the refund themselves, and since the retailers are neither mandated by statute nor prompted by financial interest to claim any refunds, the situation is an unique one for which the courts should fashion a remedy based on broad principles of restitution. The Board, on the other hand, contends that since the sales tax is imposed not on the consumer but on the retailer who is authorized but not required to reimburse himself by "passing on" the tax (citing *De Aryan* v. *Akers* (1939) 12 Cal.2d 781 [87 P.2d 695]), there is no statutory authority for an action against the Board by an individual paying sales tax reimbursement (i.e., by the consumer) and such authority is a prerequisite to suit against the Board. Both parties rely upon our opinion in *Decorative Carpets, Inc.* v. *State Board of Equalization* (1962) 58 Cal.2d 252 [23 Cal. Rptr. 589, 373 P.2d 637].

We start with *Decorative Carpets* because we feel that the principles embodied in that decision are dispositive of the issues here confronting us. There the plaintiff, a retailer, sought a refund of sales tax erroneously collected from its customers by way of reimbursement and in turn paid to the defendant Board under the same mistake. The plaintiff made clear, however, that it was seeking the refund for itself and did not intend to pass it on to its customers. The trial court held that the plaintiff was entitled to the refund on the ground that under the *De Aryan* case the plaintiff was the taxpayer and that the state had no interest in any liability the retailer might have to its customers. The Board resisted such a claim on the ground that the plaintiff would be unjustly enriched.

Our opinion was grounded on the following general principles: "Civil Code section 2224 provides: 'One who gains a thing by fraud, accident, mistake, . . . is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.' A mistake of law that causes the erroneous computation of tax reimbursements and payments . . . gives rise to an involuntary trust. [Citations.]" (58 Cal.2d at p. 254.) Observing that the retailer had paid the sums collected from the customers to the Board because of the same mistake, we declared that "[u]nder these circumstances *defendant* [the Board] would ordinarily also become a constructive trustee obligated to restore the sums to plaintiff's *customers*." (58 Cal.2d at p. 255, italics added.)

But, as the Board now reminds us, we held there that the Board's "liability to refund taxes erroneously collected, however, is governed by statute (Rev. & Tax. Code, § 6901 et seq.) and the orderly administration of the tax laws requires adherence to the statutory procedures and precludes imposing on defendant the burden of making refunds to the taxpayer's customers." (58 Cal.2d at p. 255.) We concluded that the Board had a vital interest in the integrity of the sales tax and might therefore "insist as a condition of refunding overpayments to plaintiff [retailer] that it discharge its trust obligations to its customers." (*Id.*) We reversed the judgment and remanded the cause to the trial court with directions to enter judgment for the plaintiff retailer only upon its submission of satisfactory proof that the refund would be returned to its customers from whom the excess payments were erroneously collected.

Our disposition of the case in *Decorative Carpets,* however, rested upon other fundamental principles, the significance of which seems to have escaped the Board's notice in the case at bench. In upholding the conditional refund for the retailer we observed that any other disposition "would sanction a *misuse* of the sales tax by a retailer for his *private gain,*" that "[p]arties to an action frequently have responsibilities to persons who are not parties" and that "[o]rdering the return of the funds in question to the customers from whom they were derived is consonant with legislative policy." (58 Cal.2d at p. 255, *passim.*)

In connection with this last observation we referred to section 6054.5[9]

---

[9]Section 6054.5 as amended in 1968 (i.e., after our decision in *Decorative Carpets*) provides: "(a) When an amount represented by a person to a customer as constituting reimbursement for taxes due under this part is computed upon an amount that is not taxable or is in excess of the taxable amount and is actually paid by the customer to the person, the amount so paid shall be returned by the person to the customer upon notification by the Board of Equalization or by the customer that such

which had been enacted after the overpayment made in that case and went on to say: "Although it was enacted after the overpayments were made in this case, the Legislature has never provided that customers are not entitled to recover from retailers amounts erroneously charged to cover sales taxes. *Thus it was left to the courts to define the rights of the parties in this respect and to adopt appropriate remedies. It is still left to the courts to adopt appropriate remedies when excessive reimbursements have been collected by mistake and paid to the state.* We have concluded that the remedy set forth in section 6054.5 is an appropriate model for the court to adopt in enforcing plaintiff's trust obligations in this case." (58 Cal.2d at p. 256, italics added.)

Section 6054.5, as construed by this court in *Decorative Carpets*, generally created a right in customers to recover from their retailers excessive amounts of sales tax reimbursements erroneously paid. However, it provided a specific remedy to effect this right only where two conditions occurred: (1) the money so collected had not yet been paid to the Board and (2) the excessive amount was knowingly collected. If these two conditions were met, then all retailers who failed to repay this excessive amount were obliged to pay this amount to the state. Accordingly the state was obliged to condition the eventual refund of this money to the retailer upon repayment in turn by the latter to the customer or upon sufficient proof the latter would do so.

It is noteworthy that section 6054.5 as it then read would have been in-

---

excess has been ascertained. In the event of his failure or refusal to do so, the amount so paid, if knowingly computed by the person upon an amount that is not taxable or is in excess of the taxable amount, shall constitute an obligation due from him to this state.

"(b) When transactions occur during any period for which a return is required to be filed and the total of the amounts represented by a person to his customers as constituting reimbursement for taxes due under this part with respect to those transactions exceed the taxes due from the person measured by his gross receipts during that period, the excess, if paid by and not returned to the customers, shall constitute an obligation due from the person to this state. The provisions of this subdivision shall apply when the amounts are mistakenly and not knowingly computed upon amounts that are not taxable or are in excess of the taxable amounts.

"(c) The obligations specified in subdivisions (a) and (b) may be determined and collected by the board in accordance with Chapters 5 and 6 of this part. [Fn. omitted.] The amount so collected shall be refunded by the board to the person in accordance with Chapter 7 of this part, [fn. omitted] only upon submission of proof to the satisfaction of the board, or in the event the board denies his claim for refund, to the satisfaction of the superior court, that such amount has been returned or will be returned to his customers.

"(d) The foregoing shall not apply to an amount computed by using a schedule designed to result in reimbursement in an amount as nearly equivalent as practicable to the tax applicable to total taxable sales and to the average amount of individual taxable sales."

operable in *Decorative Carpets* even had it been enacted prior to the tax transactions there involved. In that case neither necessary condition was met since the retailer had collected the excessive amount mistakenly, not knowingly, and had already paid the amount to the Board. Nonetheless, the court, in fashioning its judicial remedy to effect the customer's right to recover the excessive amount from its retailer, "concluded that the remedy set forth in section 6054.5 is an appropriate model for the court to adopt in enforcing plaintiff's [retailer] trust obligations in this case" (58 Cal.2d at p. 256) and accordingly directed that the retailer's refund be conditioned upon satisfactory proof that it would be returned by the retailer to the customer.

In 1968 subdivision (b) was added to section 6054.5 to provide the same specific remedy where the excessive amount is mistakenly collected (see fn. 9, *ante*). However, the Legislature has still failed to prescribe a specific remedy for customers where the retailer has already paid the excessive amount collected to the Board. Therefore we find ourselves in the same position as the court in *Decorative Carpets* and must fashion an appropriate remedy to effect the customers' right to their refund which is consonant with existing statutory procedures.

Defendant Board asserts, and we agree, that to give customers a direct cause of action against the Board for all erroneously collected sales tax reimbursements which have already been paid to the Board by the retailer would neither be consonant with existing statutory procedures nor with the import of *Decorative Carpets*. Nonetheless as we pointed out in *Decorative Carpets,* in respect to the customer's right to be reimbursed by the retailer, the Board is not a neutral or disinterested party for two reasons: First it has a vital interest in the integrity of the sales tax and therefore a responsibility to customers who are entitled to a refund; and, second, it holds the excessive monies collected by the retailers who paid them to the Board and it is not entitled to them. ■ Section 6054.5 and *Decorative Carpets* make it clear that both the Legislature and the courts have placed a duty upon the Board to see that the customer eventually obtains any refund made to the retailer. Although, as we observed earlier, this duty may stop short of compelling the Board to repay the customers directly, nevertheless the Board cannot use the refund procedure to abdicate its responsibility to the customer, particularly where the Board stands to unjustly profit under such circumstances.

At this point we find it convenient to refer to and to judicially notice two documents emanating from the Board on the subject of sales tax refund on refund of federal excise tax on new automobiles. They were brought to

the attention of the trial court and are set forth in the record before us and in the Board's brief on appeal. They are: (1) a notification and "operations memo" dated December 22, 1971; and (2) a news release of the same date.

The first directed to "automobile dealers and other interested parties," after referring to the repeal by Congress of the Federal Manufacturers Excise Tax, announced: "The California sales tax charged on the federal tax included in the sale price, and subsequently refunded to the customer is subject to refund, *provided the dealer returns the amount of the sales tax refund to the customer from whom it was collected.*" (Original italics.)

The second informed purchasers of cars and light trucks between August 16, 1971, and December 11, 1971, who had already received their refund of the federal excise tax, that they could collect a refund of the excessive California sales tax paid. "The Board said that the refund of sales tax may be obtained through the dealer from whom the vehicle was purchased by presenting to the dealer evidence of the refund of the Federal tax. The dealer will file a claim with the State Board of Equalization."

This procedure required the retailer to first pay the refund to the customer upon proper demand and then claim a refund in like amount from defendant Board. The Legislature in emergency legislation (Stats. 1972, ch. 44, § 1, eff. April 11, 1972) adding section 6454.5 to the Revenue and Taxation Code modified this procedure to allow the retailer to credit all refunds paid the customers upon demand against his quarterly taxes due to defendant as sales and use tax. This special legislation ceased to be of force and effect on June 30, 1973.

Under the procedure set up by the Board the retailer is the only one who can obtain a refund from the Board; yet, since the retailer cannot retain the refund himself, but must pay it over to his customer, the retailer has no particular incentive to request the refund on his own. Despite this lack of incentive, the Board has not required the retailer to refund the total excessive amount collected, but rather has merely allowed retailers to collect a refund when the retailer is compelled to pay a refund himself to a customer who has demanded it.

Thus the entire burden is upon the customer. Unless the customer demands his refund, the money erroneously collected will remain with the Board, despite the fact that the customer is the one entitled to it. Moreover, the customer has been informed of this right solely by means of a general press release. The Board has not required the retailer to notify his customer that the refund is due and owing, even though the retailer has all the necessary information. In short under the procedure which it has es-

tablished, the Board is very likely to become enriched at the expense of the customer to whom the amount of the excessive tax actually belongs.

Purchasers are entitled to their refund from the retailers. (§ 6054.5.) Prior to June 30, 1973, a purchaser could arguably have received complete relief by suing his retailer, even though the retailer had already paid the money to the Board, since pursuant to section 6454.5 the retailer could have credited all refunds paid against his quarterly sales tax bill. In the normal case this quarterly tax bill would greatly exceed the refunds owed. However, as previously pointed out, section 6454.5 expired on June 30, 1973. Therefore, purchasers can most effectively enforce their refund right by compelling retailers to claim their own refunds from the Board. The Board has admitted that it must pay these refunds to retailers. All that plaintiffs seek in this action is to compel defendant retailers to make refund applications to the Board and in turn to require the Board to respond to these applications by paying into court all sums, if any, due defendant retailers.

We think that to require this minimal action from the Board is clearly mandated by the Board's duty to protect the integrity of the sales tax by ensuring that the customers receive their refunds. ■ The integrity of the sales tax requires not only that the retailers not be unjustly enriched (*Decorative Carpets, Inc.* v. *State Board of Equalization, supra,* 58 Cal.2d 252), but also that the state not be similarly unjustly enriched.

■ We hold that under the unique circumstances of this case a customer, who has erroneously paid an excessive sales tax reimbursement to his retailer who has in turn paid this money to the Board, may join the Board as a party to his suit for recovery against the retailer[10] in order to require the Board in response to the refund application from the retailers to pay the refund owed the retailers into court or provide proof to the court that the retailer had already claimed and received a refund from the Board. We think that allowing the Board to be joined as a party for these purposes in the customer's action against the retailer is an appropriate remedy entirely consonant with the statutory procedures providing for a customer's recovery of erroneously overpaid sales tax. For the foregoing

---

[10]Since the Board has a "vital *interest* in the integrity of the sales tax" (*Decorative Carpets, Inc.* v. *State Board of Equalization, supra,* 58 Cal.2d 252, 255, italics added) and would acquire rights to the money once the limitation period for refunds has expired (§ 6933), it is clear that it may be joined as a defendant pursuant to section 379, subdivision (a)(2) of the Code of Civil Procedure: "(a) All persons may be joined in one action as defendants if there is asserted against them: . . . (2) A claim, right, or interest adverse to them in the property or controversy which is the subject of the action."

reasons, we conclude that the complaint and each count thereof states facts sufficient to constitute a cause of action.

The judgment is reversed and the cause is remanded to the trial court with directions to overrule the demurrer and to allow defendant Board a reasonable time within which to answer.

Wright, C. J., Tobriner, J., Mosk, J., and Burke, J., concurred.

**CLARK, J.**—I dissent.

Under some circumstances, the Legislature's failure to establish a remedy to effectuate a right to a sales tax refund may justify this court's conclusion that the Legislature has purposely left it to the judiciary to create a remedy. (*Decorative Carpets, Inc.* v. *State Board of Equalization* (1962) 58 Cal.2d 252, 255-256 [23 Cal.Rptr. 589, 373 P.2d 637].) However, no such conclusion is justified here. Former section 6454.5 of the Revenue and Taxation Code was adopted as an urgency measure establishing a remedy for refund of sales taxes paid on the basis of the federal excise tax on motor vehicles between 16 August 1971 and 10 December 1971. (Stats. 1972, ch. 44, § 1, p. 62.)[1] That statute did not provide for actions by retail purchasers against the State Board of Equalization. Assembly Bill No. 222 providing for direct refunds from the board to retail customers, although ordered to third reading, eventually died in the inactive file. (Assem. J. (1972 Reg.Sess.) pp. 1857, 1919, 2177, 8661.)

The Legislature having specifically established a method for recovery of

---

[1]Former section 6454.5 of the Revenue and Taxation Code provided: "Notwithstanding any other provision of law, any person licensed or certificated pursuant to the Vehicle Code as a vehicle manufacturer, dealer or dismantler may credit against any taxes due under this part, Part 1.5 (commencing with Section 7200), and Part 1.6 (commencing with Section 7251), of Division 2 for any quarterly period any amounts which have been returned during that period to retail customers as excess sales tax reimbursement as the result of the refund to such customers of the federal excise tax on manufacturers, producers or importers of motor vehicles sold during the period August 16, 1971, through December 10, 1971.

"Any person claiming such credit shall file with the quarterly return on which the credit is claimed a written statement that the amount credited has been returned to the customers and shall retain evidence that the amount was so returned. Such person shall also retain proof (1) as to the amount of federal excise tax refunded to the customer by the manufacturer, (2) that the vehicle was sold to the purchaser to whom the federal excise tax was refunded, and (3) that the federal excise tax was included in the measure of sales taxes reported and paid to the State Board of Equalization.

"This section shall have no further force or effect after June 30, 1973 and is repealed at such time."

the taxes involved here and having failed to adopt Assembly Bill No. 222, there is no basis for concluding the Legislature intended to leave it to courts to fashion a remedy, and this court should not do so. The general provision prohibiting actions against the board by retail purchasers (Rev. & Tax. Code, § 6901 et seq.; *Decorative Carpets, Inc.* v. *State Board of Equalization, supra,* 58 Cal.2d 252, 255), should therefore be given effect, and the judgment affirmed.

McComb, J., concurred.