Siggins, J.
*611 *255 Plaintiff Larry Littlejohn appeals from a ruling sustaining a demurrer to his third amended complaint (complaint) without leave to amend. Littlejohn sought to sue Costco Wholesale Corporation and Costco Wholesale Membership, Inc. (Costco), the California Board of Equalization (Board) and Abbott Laboratories, Inc. (Abbott) to recover amounts he paid in sales tax reimbursement on purchases of Abbott's product Ensure.
Littlejohn alleged that because Ensure is properly categorized as a food product no sales tax was actually due on his purchases. Costco should not have charged him sales tax reimbursement, and was under no obligation to pay and should not have paid sales tax to the state on its sales of Ensure.
Littlejohn based his claim on a cause of action identified by our Supreme Court in Javor v. State Board of Equalization (1974) 12 Cal.3d 790, 117 Cal.Rptr. 305, 527 P.2d 1153 ( Javor ), that held under "the unique circumstances" of that case, that the customer could sue "to compel defendant retailers to make refund applications to the Board and in turn require the Board to respond to these applications by paying into court all sums, if any, due defendant retailers." ( Id . at p. 802, 117 Cal.Rptr. 305, 527 P.2d 1153.) Because this case does not involve allegations of unique circumstances showing the Board has concluded consumers are owed refunds for taxes paid on sales of Ensure, we affirm.
BACKGROUND
The complaint alleges a putative class action against Costco and the Board. It alleges that on February 16, 2013, Littlejohn purchased a case of Ensure nutritional drinks at Costco and was charged sales tax reimbursement. Costco paid sales tax on this purchase to the Board even though, according to the complaint, the Board had "already in the first instance 'ascertained' that the Ensure products involved in this action are not subject to sales tax."[1] Costco allegedly collected sales tax reimbursement and paid sales tax on Ensure from August 2006 through the date of Littlejohn's purchase in 2013, although by the time the third amended complaint was filed it had stopped doing so for more than a year.
*256 The complaint alleges in considerable detail, supported by documents issued by the Board, that during the period in question Ensure was classified as a food product exempt from sales tax, not a nutritional supplement that would have been subject to tax. For some time before 2002, it appears Ensure was considered a food product not subject to sales tax. In 2002 the labelling on Ensure was changed and, due to the labelling change, at that time the Board considered Ensure to be a nutritional supplement. But the labeling was changed again in 2006, and the Board, in an informal opinion of tax counsel, advised a taxpayer that Ensure qualified as "a food product for human consumption, the sales of which are not subject to tax." In March 2013 a letter from one of the Board's auditors, in response to an e-mail inquiry, restated the position that sales of Ensure were not taxable. This position was also restated in the Board's September 2013 Tax Information Bulletin stating that: "The products Ensure [and] Ensure Plus ... are not currently taxable because their labels meet the definition of a nontaxable food product."
*612 The complaint asserted two causes of action against Costco, and a third cause of action against Costco and the Board. The first alleged that Costco breached an implied contract with its customers by charging sales tax reimbursement on products not actually subject to tax. The second alleged that Costco engaged in unfair business practices by representing to customers that sales of Ensure were taxable and collecting sales tax reimbursement on such sales. The third cause of action presents the issue before us. It is predicated on Javor, and alleges the Board is a constructive trustee of the sales tax erroneously collected and paid to the state by Costco on its sales of Ensure. Accordingly, that sales tax should be refunded to Costco and in turn refunded to the Costco customers who paid the sales tax reimbursement. This cause of action seeks to require the court to "[o]rder Costco to immediately apply to the full extent it legally can do so to the [Board] for reimbursement of all sales tax it paid to the [Board] due to sales of Ensure in order to immediately return to the class the sales tax reimbursement it paid to Costco for Ensure and to pay interest on said sums from the date they were paid to Costco to the full extent allowed by law."
Defendants demurred. Littlejohn opposed the demurrers and moved to compel Costco to file a refund claim with the Board. The court sustained the demurrers without leave to amend and denied the motion to compel. The court concluded that the judicially noticed documents in the record showed the Board had not resolved the question of whether Ensure was nontaxable during the relevant period. Specifically, it ruled that the opinion of counsel and other documents said to support the third cause of action were not the functional equivalent of the Board's determination in Javor . The court held that the documents were entitled to deference, but they did not have the same force of law as regulations adopted by the Board and were not binding.
*257 Littlejohn's appeal is timely.
DISCUSSION
1. The Claims Against Costco
a. Claims Premised on the Unfair Practices Act. [2]
In Loeffler v. Target Corp. (2014) 58 Cal.4th 1081, 171 Cal.Rptr.3d 189, 324 P.3d 50 ( Loeffler ) our Supreme Court reviewed the history and development of California law on the issues raised by Littlejohn's complaint. In a brief overview, the Court summarized: "under California's sales tax law, the taxpayer is the retailer, not the consumer. In addition, the taxability question, whether a particular sale is subject to or is exempt from sales tax, is exceedingly closely regulated, complex, and highly technical. A comprehensive administrative scheme is provided to resolve these and other tax questions and to govern disputes between the taxpayer and the Board. Under these administrative procedures, it is for the Board in the first instance to interpret and administer an intensely detailed and fact-specific sales tax system governing an enormous universe of transactions. Administrative procedures must be exhausted before the taxpayer may resort to court. ... [T]his comprehensive statutory scheme is inconsistent with consumer claims such as plaintiffs' by which a party other than the taxpayer would seek to litigate whether a sale is taxable or exempt." ( Loeffler, supra, 58 Cal.4th at p. 1103, 171 Cal.Rptr.3d 189, 324 P.3d 50.) For that reason the Court rejected unfair *613 business practice claims against a retailer based on the allegation that the retailer had collected a sales tax reimbursement on take-out sales of coffee allegedly not subject to a sales tax, because resolution of the claims would require the court to determine the taxability of the transactions. For the same reason, the trial court clearly was correct in this case to sustain the demurrers to plaintiff's first and second causes of action. Both are based on the premise that the sale of Ensure is not taxable, which fact the court would have to determine to sustain the claim.
b. Claim Premised on Javor
Article XIII, section 32 of our state constitution provides in part: "After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."
As Loeffler described, sales tax is imposed on retailers for the privilege of selling tangible personal property, and it is the retailers, not the *258 purchasing consumers, who pay the tax. What is commonly understood to be sales tax paid on transactions by consumers is really sales tax reimbursement paid to the retailer. These principles are particularly relevant to actions or claims for refunds. It is the taxpaying retailer who may file a claim for a refund with the taxing agency after first paying sales tax, not the consumer or purchaser of goods. ( Loeffler, supra , 58 Cal.4th at pp. 1104, 1107, 171 Cal.Rptr.3d 189, 324 P.3d 50.)[3]
In Decorative Carpets, Inc. v. State Board of Equalization (1962) 58 Cal.2d 252, 23 Cal.Rptr. 589, 373 P.2d 637 ( Decorative Carpets ), our Supreme Court held that legislative policy supported a constructive trust theory that would justify ordering a plaintiff retailer who sought and obtained a refund for overpayment of sales taxes to repay its customers who were charged the tax. ( Id. at p. 255, 23 Cal.Rptr. 589, 373 P.2d 637.) In reaching this holding, the court explained that the Board's "liability to refund taxes erroneously collected, however, is governed by statute ( Rev. & Tax. Code, § 6901 et seq. ) and the orderly administration of the tax laws requires adherence to the statutory procedures and precludes imposing on [the Board] the burden of making refunds to the taxpayer's customers. [The Board], however, has a vital interest in the integrity of the sales tax ( County of San Bernardino v. Harsh Calif. Corp., supra, 52 Cal.2d 341, 345 [340 P.2d 617] ), and may therefore insist as a condition of refunding overpayments to plaintiff that it discharge its trust obligations to its customers. To allow plaintiff a refund without requiring it to repay its customers the amounts erroneously collected from them would sanction a misuse of the sales tax by a retailer for his private gain." ( Ibid . )
In Javor, supra , 12 Cal.3d 790, 117 Cal.Rptr. 305, 527 P.2d 1153, our Supreme Court considered whether a customer could file a direct action against the Board *614 for a refund of sales tax. In rejecting a direct action, the court observed that "to give customers a direct cause of action against the Board for all erroneously collected sales tax reimbursements which have already been paid to the Board by the retailer would neither be consonant with existing statutory procedures nor with the import of Decorative Carpets ." ( Id . at p. 800, 117 Cal.Rptr. 305, 527 P.2d 1153.) Nonetheless, the court recognized that the Board had a duty 'to see that the customer obtains any refund made to the retailer.' " ( Ibid . ) *259 But Javor arose under "unique circumstances." ( Javor, supra , 12 Cal.3d at p. 802, 117 Cal.Rptr. 305, 527 P.2d 1153.) There, the customer was seeking a refund of sales tax paid on a purchase price that included a repealed federal excise tax. The Board promulgated a regulation authorizing retailers who had collected and received refunds of the repealed tax to seek a refund of sales tax on the condition that they pay the refunded taxes to their customers. ( Id . at p. 794, 117 Cal.Rptr. 305, 527 P.2d 1153.) The process required the retailer to demonstrate to the Board that a refund had been paid in order to receive a like amount from the Board. The court observed that "[u]nder the procedure set up by the Board the retailer is the only one who can obtain a refund from the Board; yet, since the retailer cannot retain the refund himself, but must pay it over to the customer, the retailer has no particular incentive to request the refund on his own. Despite this lack of incentive, the Board has not required the retailer to refund the total excessive amount collected, but rather has merely allowed retailers to collect a refund when the retailer is compelled to pay a refund to a customer who has demanded it." ( Id . at p. 801, 117 Cal.Rptr. 305, 527 P.2d 1153.)
The Javor court recognized that there had been an urgency statute that arguably provided customers a cause of action against a retailer for the refund, but that statute had expired. ( Javor, supra , 12 Cal.3d at p. 802, 117 Cal.Rptr. 305, 527 P.2d 1153.) "Therefore, purchasers can most effectively enforce their refund right by compelling retailers to claim their own refunds from the Board. The Board has admitted that it must pay these refunds to retailers. All that plaintiffs seek in this action is to compel defendant retailers to make refund applications to the Board and in turn require the Board to respond to these applications by paying into court all sums, if any, due defendant retailers. ... [¶] We think that to require this minimal action from the Board is clearly mandated by the Board's duty to protect the integrity of the sales tax by ensuring that customers receive their refunds. ... [¶] [A]llowing the Board to be joined as a party for these purposes in the customer's action against the retailer is an appropriate remedy entirely consonant with the statutory procedures providing for a customer's recovery of overpaid sales tax." ( Ibid . )
We know of no published case since Javor that has allowed a cause of action against the Board to proceed for the purpose of directing a retailer to file a claim for a refund of sales tax. In Loeffler , our Supreme Court confirmed that the exact contours of a Javor -type claim remain undefined: "The integrity of the tax system and avoidance of unjust enrichment, possibly of the retailer, but more probably of the state, in certain circumstances may support a Javor -type remedy for consumers. Plaintiffs, however, declined to pursue such a remedy, and we need not consider the exact showing required of consumers to demonstrate their entitlement to the Javor remedy." ( Loeffler, supra , 58 Cal.4th at pp. 1133-1134, 171 Cal.Rptr.3d 189, 324 P.3d 50.)
*615 *260 The most recent published case to reject a possible Javor cause of action is McClain v. Sav-on Drugs (2017) 9 Cal.App.5th 684, review granted June 14, 2017, S241471 ( McClain ). McClain distilled from Decorative Carpets and Javor three factors for courts to consider in deciding whether to recognize a Javor cause of action. They are: 1) whether the plaintiff has an available statutory remedy for a tax refund; 2) whether the proposed judicial remedy would be consonant with statutory tax refund procedures; and 3) whether there has been a "precursor determination" either by the Board or as a result of legal action by a taxpayer that a tax refund is due and owing. ( Id . at p. 697.) McClain concludes that "[l]imiting a court's authority to fashion new tax remedies to situations involving all three of these requirements specifically reinforces the constitutional mandate, described above, that the Legislature have primacy in fixing the procedures by which tax refunds are obtained." ( Id . at p. 698.) We agree.
Appellant argues this case is the one that should recognize a Javor cause of action. According to appellant, the August 21, 2006 informal opinion of the Board's tax counsel (annotation), a March 2013 letter from one of the Board's auditors, and the Board's September 2013 Tax Information Bulletin stating that some forms of Ensure are not taxable as a food product constitute a precursor determination of refund that provide the unique circumstances warranting a Javor remedy. For the reasons that follow, we disagree.
In this case, there is no question that the first requirement identified in McClain is met. Appellant, a Costco customer, has no statutory remedy for a sales tax refund. Nor is the remedy he proposes, compelling Costco as the taxpayer to file a refund claim with the Board, in fatal conflict with the statutory scheme. But appellant has not shown that the Board made a precursor determination that sales tax paid on purchases of Ensure between May 30, 2009, and mid-2014 must be refunded.
In the most fundamental sense, the documents appellant relies upon to demonstrate the Board's position are substantively deficient for the simple reason that they say nothing of the propriety of refunds for retailers who paid taxes on sales of Ensure. The most that can be said is that for some time following a product labelling change in 2002, the Board's counsel opined that sales of specified Ensure products were subject to tax. In 2006 counsel's view changed and it concluded sale of those products were not taxable. However, none of the documents were issued in response to an inquiry about refunds or address whether tax paid by retailers on sales of Ensure products would be refunded. In sharp contrast, in Javor "[t]he Board ha[d] admitted that it must pay these refunds to retailers ." ( Javor, supra , 12 Cal.3d at p. 802, 117 Cal.Rptr. 305, 527 P.2d 1153, italics added.) The Board has made no such determination in this case.
*261 More importantly, the Board's regulations and case law make clear that the documents plaintiff relies upon do not have the force of law and are not binding on the Board. Opinions of counsel, such as the one plaintiff relies upon issued in August 2006, have no precedential effect and may be relied upon only by the person seeking advice from the Board. ( Cal. Code Regs., tit 18, § 1705.)[4] Of course, they are written *616 on the Board's letterhead and considered to be the opinions of the Board's counsel. But when the Board determines to issue a decision with binding effect, it does so in the form of a "precedential decision" of the Board. ( Cal. Code Regs., tit. 18, § 5551, subd. (b)(4).)
In contrast, the purpose of advice letters of counsel is to provide the requesting taxpayer a safe harbor from tax liability. By inquiring of the taxability of a transaction or item for sale, the taxpayer can use the Board's reply as a defense to any claim. To that end, Revenue and Taxation Code section 6596 provides that if a person's "failure to make a timely return or payment is due to the person's reasonable reliance on written advice from the board, the person may be relieved of the [sales and use] taxes imposed ... and any penalty or interest added thereto." There appear to be many such letters issued each year. (See generally, Board of Equalization, Business Taxes Law Guide, Volume 2.) We are therefore concerned that holding counsels' replies to specific taxpayer inquiries to be a precursor determination sufficient to support a Javor cause of action will have a perverse effect on the integrity of our sales tax system. "[I]t is presumed that all "gross receipts" are subject to the sales tax unless the contrary is established by the retailer. (§ 6091.) This presumption exists in order to ensure 'the proper administration of [the sales tax law] and to prevent evasion of the sales tax. ...' [Citation.] Taxpayers' exemption claims must be supported by adequate records. [Citation.] The burden of proof is on the taxpayer." ( Loeffler , supra , 58 Cal.4th at p. 1107, 171 Cal.Rptr.3d 189, 324 P.3d 50.) Moreover, the willingness of taxpayer retailers to seek safe harbor written advice from the Board could be stifled if doing so would expose them to potential litigation under a Javor scenario and the burdens of preparing an *262 administrative claim for refund and distributing refunded amounts to potentially countless consumers.[5]
For similar reasons that we decline to give legal effect to the opinion of counsel, we decline to give effect to the March 2013 letter by a Board auditor. The March 13 letter is written in response to an e-mail inquiry by a consumer. It is not advice to a taxpayer, nor does it address particular sales transactions over a specific time. It merely directs the inquiring consumer to address a possible claim of refund with the appropriate retailer. Neither is the information in The Tax Information Bulletin a precursor determination by the Board, for the simple reason that it is a newsletter, not a decision of the Board, a legal opinion, or even a reply to a specific factual inquiry.
*617 The Tax Information Bulletin provides general information to inform taxpayers and interested parties "in simplified terms the most common areas of noncompliance" they are likely to encounter. (See Rev. and Tax. Code, § 7084.) There is no basis to give this document legal effect.
Appellant in oral argument said the decision most favorable to his position is Loeffler . Presumably, he is referring to the court's suggestion that a Javor remedy lies "when neither the Board nor the taxpayer has an interest in 'ascertaining' whether excess reimbursement has been charged." ( Loeffler , supra , 58 Cal.4th at p. 1122, 171 Cal.Rptr.3d 189, 324 P.3d 50.) However, in light of the Board's vital interest in the integrity of our state's tax laws, we decline to infer, absent some particular allegation, that the Board has no interest in ascertaining whether excess sales tax reimbursement has been charged to a California consumer.
Loeffler acknowledged informal remedies available to consumers who believe they have been charged excess sales tax reimbursement. The Board fields a large number of telephone calls and e-mails from the public; tips from informants can lead to taxpayer audits; complaints can lead to deficiency determinations; and interested persons may petition for the Board to adopt, amend or repeal regulations, or file declaratory relief actions challenging the imposition of a tax. ( Loeffler , supra , 58 Cal.4th at p. 1123, 171 Cal.Rptr.3d 189, 324 P.3d 50.)
Finally, Loeffler 's suggested remedy of declaratory relief actions to challenge the imposition of sales tax as inconsistent with statute or constitution (see ibid . ) is not toothless. To the contrary, such actions can lead to a legislatively crafted refund remedy that takes into *263 account public policy and the administrative burden and expense of processing claims. In Rider v. County of San Diego (1991) 1 Cal.4th 1, 2 Cal.Rptr.2d 490, 820 P.2d 1000 ( Rider ), the court declared unconstitutional a supplemental sales and use tax designed to pay for construction of a county jail and youth facility because it was not approved by two-thirds of San Diego's voters as required under Article XIII A, section 4 of our state constitution. In response to Rider , the legislature crafted a refund remedy for consumers with a threshold of purchases in excess of $5,000. In affirming the legislative refund scheme and rejecting a Javor -type class remedy, the Court of Appeal observed: "[S]ince a consumer with under $5,000 in purchases would be entitled to a return of less than $25, the administrative costs associated with the court-ordered scheme of direct refunds to all consumers would likely neutralize a substantial portion of the scheme's asserted benefits. Thus, given the great latitude accorded the Legislature in tax matters, we conclude the statutory $5,000 threshold requirement for refunds is not impermissible." ( Kuykendall v. State Bd. of Equalization (1994) 22 Cal.App.4th 1194, 1214, 27 Cal.Rptr.2d 783.) This kind of pragmatic approach that may be employed by a legislative body counsels us not to employ a judicially created remedy when the entitlement to a refund of sales tax and the administrative burdens of a refund process are unclear.
We are aware that Loeffler cautions: "The integrity of the tax system and avoidance of unjust enrichment, possibly of the retailer, but more probably of the state, in certain circumstances may support a Javor -type remedy for consumers." ( Loeffler , supra , 58 Cal.4th at p. 1133, 171 Cal.Rptr.3d 189, 324 P.3d 50.) But the state is not unjustly enriched when sales taxes are overpaid due to a taxpayer's good faith misinterpretation of his or her obligation to pay tax. "One may not recover *618 under a theory of unjust enrichment a payment made to a unit of government unless it was made under coercion. A person who, at the time of payment misinterprets the law to his detriment does not thereby gain a right of recovery; he must have paid as a result of compulsion." ( Reynolds v. City and County of San Francisco (1975) 53 Cal.App.3d 99, 101, 125 Cal.Rptr. 673.) There is no allegation here that Costco paid sales tax on Ensure under protest or as a result of any threatened enforcement action or other government coercion.
Our review of the foregoing authorities lead us to conclude that a Javor remedy should be limited to the unique circumstances where the plaintiff's allegations show that the state has been unjustly enriched by the overpayment of sales tax, and the Board concurs that the circumstances warrant refunds to consumers. Requiring such allegations ensures that courts will be faithful to our state constitution's delegation of authority to craft a remedy for the overpayment of sales tax to the Legislature, and to the *264 statutory scheme that allows the Board to first take into account the timeliness of any claims for refund, the likely amounts involved and the burdens and costs implicit in its refund procedure.
2. The claims against Abbott
Plaintiff's second amended complaint also contains two causes of action against Abbott, the manufacturer of Ensure. It alleges the existence of an unspecified agreement under which Costco purchases Ensure from Abbott that is "in force regardless of who actually sells the product to Costco." The pleading alleges, "Although Abbott does or may also use distributors or middlemen to sell the product it remains liable for all promises made in the chain of distribution to Costco to induce it to stock and sell Ensure." The agreement allegedly contains an "implied and/or express" provision that Abbott would "alert Costco of a potential tax consequence of all material ingredient and label changes of Ensure and ... take all reasonable steps to alert Costco of changes that do, or are reasonably likely to, affect sales tax consequences and of the fact that any such changes do or are likely to affect sales tax status." Plaintiff and all persons who purchased Ensure from Costco allegedly are third party beneficiaries of the agreement. The second amended complaint alleges one cause of action for breach of the alleged agreement and another cause of action alleging that Abbott's conduct violated Business and Professions Code, sections 17200 and 17500"by failing to adequately notify retailers, including Costco, that the sales tax status of Ensure had changed, was likely to change, and/or that the label or ingredients had changed."
The trial court sustained Abbott's demurrer to both causes of action without leave to amend. The court explained, among other things, that "the complaint makes it plain that Abbott had nothing to do with the collection or payment of the taxes. ... [T]here is no suggestion that Abbott was under a duty to notify the retailers of [the fact that the tax status of the product had changed], or how plaintiff would in some way be the beneficiary of that duty." We agree with the trial court. From the pleading it is far from clear that there was ever any agreement between Abbott and Costco, much less one that contains either an express or implied provision such as plaintiff describes or with respect to which all Costco customers would be third party beneficiaries. Moreover, no facts are alleged that would give rise to a duty on Abbott's part to advise retailers of the sales taxability of its products in the various jurisdictions in which *619 the products are sold, or that would create a duty to customers paying sales tax reimbursement on their purchases of the product. Plaintiff has cited no authority supporting these claims, nor has he suggested any facts he might add to the complaint were leave to amend granted that would establish a right to relief against Abbott. Abbott's demurrer was properly sustained without leave to amend. *265 DISPOSITION
The judgment is affirmed.
I concur:
McGuiness, Acting P.J.*

The specific products Littlejohn claims are not subject to tax are Ensure, Ensure Plus and Ensure Clinical Strength (Ensure).

Business and Professions Code section 17200 et seq.

Sales taxes were formerly administered by the defendant Board of Equalization. (Loeffler, supra, 58 Cal.4th at p. 1107, 171 Cal.Rptr.3d 189, 324 P.3d 50.) In 2017, the functions of the Board relevant to this case were transferred to the California Department of Tax and Fee Administration. (Gov. Code § 15570.22 ; 2017 Stats. 2017, ch 16, § 5.) We will continue to refer to the Board in this opinion as the entity responsible for administering the tax.
We also deny appellant's request for judicial notice. The regulations of the Board that appellant seeks to have this court notice have been superseded by emergency regulations that pertain to the authority of the Department of Tax and Fee Administration to consider claims for refunds.

The California Business Taxes Law Guide, volume 2, published by the Board provides the following explanatory note: "Annotations published in the Business Taxes Law Guides are summaries of the conclusions reached in selected legal rulings of counsel. 'Legal ruling of counsel' means a legal opinion written and signed by the Chief Counsel or an attorney who is the Chief Counsel's designee, addressing a specific tax application inquiry from a taxpayer or taxpayer representative, a local government, or Board of Equalization staff.
Business Taxes Annotations are a research tool to locate selected legal rulings of counsel. Annotations are intended to provide guidance regarding interpretation of Board statutes and regulations as applied by staff to specific factual situations. Annotations do not have the force or effect of law. Although annotations are synopses of past advice provided by Board's legal staff, the advice is not binding and may be revised at any time."

Filing a claim for refund of sales tax is subject to a strict limitation period and can be a fairly complex and burdensome process. (See Cal Code Regs. tit. 18, §§ 5230, 5231, 5232 ; Barnes v. State Bd. of Equalization (1981) 118 Cal.App.3d 994, 173 Cal.Rptr. 742 [Board remedy for refund not exhausted when retailer failed to produce date of each sale or purchase, contract or invoice number for each sale, sales/purchase price for each item, periods in which tax was paid and amount of state (versus local) sales tax paid on each item].)

Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.