[Civ. No. 37781. First Dist., Div. Four. Nov. 19, 1975.]

RAYMOND J. REYNOLDS, Plaintiff and Respondent, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Appellants.

**COUNSEL**

Thomas M. O'Connor, City Attorney, Burk E. Delventhal and William P. Lynch, Deputy City Attorneys, for Defendants and Appellants.

Raymond J. Reynolds, in pro. per., for Plaintiff and Respondent.

**OPINION**

**CHRISTIAN, J.**—Respondent, Raymond J. Reynolds, desiring to continue in office as a judge of the municipal court, paid a filing fee in the sum of $346.05 upon presenting his candidacy papers to the registrar of voters. The fee was paid by respondent without protest.

Thereafter, on May 31, 1974, the Supreme Court of California in *Donovan* v. *Brown* (1974) 11 Cal.3d 571 [115 Cal.Rptr. 41, 524 P.2d 137], and later in *Knoll* v. *Davidson* (1974) 12 Cal.3d 335 [116 Cal.Rptr. 97, 525 P.2d 1273], declared unconstitutional Elections Code sections 6551, 6552, 6553, 6554 and 6555, under which the filing fee had been required. On September 5, 1974, respondent claimed a refund of the filing fee; the claim was denied, and respondent sued in the small claims court. Respondent prevailed at trial; the city appealed to the superior court, and the appeal was later certified to this court.

Appellant contends that because respondent made no protest when he paid the fee he should not be permitted to recover even though the statute authorizing the fee was later declared unconstitutional. Conceding that he paid the fee without protest, respondent argues that he nevertheless paid under coercion, and therefore should be allowed recovery.

One may not recover under a theory of unjust enrichment a payment made to a unit of government unless it was made under coercion (*Brumagim* v. *Tillinghast* (1861) 18 Cal. 265). A person who, at the time of payment misinterprets the law to his detriment does not thereby gain a right of recovery; he must have paid as a result of compulsion. (*Id.,* at pp. 270-271.)

Thus, in *Garibaldi* v. *City of Daly City* (1943) 61 Cal.App.2d 514 [143 P.2d 397], plaintiffs challenged a special assessment levied by the city. Plaintiffs paid the assessment under a threat that bonds would be issued against the property. Holding that the plaintiff had no right to recovery, the court said that even if the city employed duress, a protest by plaintiff was required. "While it is true that in California certain cases have held that payments made under duress or compulsion without a formal protest are recoverable, such cases are distinguishable from the one before us. All those which independent research has disclosed involve sets of facts in which a formal protest would have been unavailing and in which the collector was aware of the claimed invalidity of the tax collected. . . . A protest serves not only to warn the recipient that he must be prepared to refund the money and must guide his acts accordingly, but also to make the recipient aware of the nature of the claimed illegality. Where, as in the cited cases, the collector is aware of the claimed illegality, either by other protests of similarly situated individuals or the forceful nature of the collection method, the collector can protect himself." (*Id.,* at pp. 516-517.)

Nonprotesting plaintiffs have apparently been successful only in cases where it has been established that a protest would have been a futile gesture. (See *Flynn* v. *San Francisco* (1941) 18 Cal.2d 210 [115 P.2d 3] [tax collector's threats and actions indicated intent to enforce irrespective of protest]; *Young* v. *Hoagland* (1931) 212 Cal. 426 [208 P. 996, 75 A.L.R. 654] [board of directors threatened to sell plaintiff's stock]; *Whyte* v. *State of California* (1930) 110 Cal.App. 314 [294 P. 417] [recovery of corporation taxes permitted where Secretary of State had notice that the tax was being protested by other corporations]; *Grimes* v. *County of*

*Merced* (1928) 96 Cal.App. 76 [273 P. 839] [recovery of water district assessment payments where plaintiff's property was first sold to state for failure to pay the assessment, and plaintiff redeemed the property paying the assessment with costs and penalties].) In other cases where claimants have been successful, payment had been accompanied by some form of protest. (See *Trower* v. *City and County* (1907) 152 Cal. 479, 480 [92 P. 1025]; *City of Belmont* v. *Union Paving Co.* (1957) 156 Cal.App.2d 214, 217 [319 P.2d 353]; *Lewis* v. *San Francisco* (1905) 2 Cal.App. 112, 113 [82 P. 1106].)

Respondent cites *Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1 [97 P.2d 963] [app. dism. (1940) 310 U.S. 610 (84 L.Ed. 1388, 60 S.Ct. 979)], to support his argument that a protest is not necessary. The court did indicate that the presence or absence of a protest was not the "distinguishing feature" on the issue of voluntariness (*id.*, at p. 7). Instead, the voluntary character of the payments was apparently determined by the fact that they were made prior to delinquency. Contrary to respondent's contentions, *Southern Service* does not resolve the issues raised in the instant case, it merely confirms the rule that the existence or nonexistence of a protest is not conclusive on the question of voluntariness. (See *Flynn* v. *San Francisco, supra,* 18 Cal.2d 210.)

Respondent also cites *Newport Bldg. Corp.* v. *City of Santa Ana* (1962) 210 Cal.App.2d 771 [26 Cal.Rptr. 797], where plaintiff sought to have a subdivision map approved after acquiring and preparing land for subdivision purposes. The city engineer informed plaintiff he would have to pay a fee. Plaintiff objected, but was told that the fee was required under the ordinance. (*Id.*, at pp. 775, 779.) The court held that under these circumstances there was coercion, and specifically noted that the "trial court was entitled to conclude that defendant's city engineer refused to approve the final map until the fee of $50 per lot had been paid." (*Id.*, at p. 779.) But in the present case it is conceded that respondent did not object when he paid the fee.

In sum, coercion is not found to be present where only the severity of the consequences to the individual is available for consideration. Additional circumstances are required, showing that the payment was not made as a result of a misinterpretation of the law, but because the authorities refused to recognize the legitimacy of the payer's position. Such circumstances do not appear in the record of this case.

It has been suggested that Government Code section 26906 requires refund in this case. The section states: "Any money other than taxes erroneously paid into the county treasury may be returned to the person paying it in upon a warrant drawn by the auditor on the order of the board of supervisors based upon such voucher as shows proper evidence of the facts. The board of supervisors may, by resolution, authorize the auditor to act in lieu of and with the same authority, as the board of supervisors in ordering the return of such money. If the board of supervisors authorizes the auditor to make such refunds in lieu of and with the same authority as the board, the auditor shall periodically, but not less than annually, file a report with the board listing all such refunds." The language of the statute is permissive, not mandatory; it creates no right of recovery. (See *County of Tulare* v. *County of Kern* (1933) 132 Cal.App. 462, 466 [22 P.2d 750].)

The judgment is reversed.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied December 12, 1975, and respondent's petition for a hearing by the Supreme Court was denied January 14, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.