Filed 8/3/18 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LARRY LITTLEJOHN,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>COSTCO WHOLESALE<br>CORPORATION et al.,<br><br>     Defendants and Respondents. | A144440<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-13-531835)<br><br>**ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT** |

BY THE COURT:

It is ordered that the opinion filed herein on July 13, 2018, be modified as follows:

1.  On page 2, in the first paragraph of the section entitled "BACKGROUND," the word "not" in the quotation in the second full sentence is to be underlined, so it will now read: "<u>not</u> subject to sales tax."

2.  On page 9, in the paragraph commencing with the words "In contrast" the fourth full sentence which beings with the words "As counsel for the Board advised this court" is deleted and the following sentence is inserted in its place: "There appear to be many such letters issued each year."

The petition for rehearing filed July 30, 2018, is denied. There is no change in the judgment.


Date: August 3, 2018 _____Siggins, P.J._____P.J.

1

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LARRY LITTLEJOHN,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>COSTCO WHOLESALE<br>CORPORATION et al.,<br><br>      Defendants and Respondents. | A144440<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-13-531835) |

Plaintiff Larry Littlejohn appeals from a ruling sustaining a demurrer to his third amended complaint (complaint) without leave to amend. Littlejohn sought to sue Costco Wholesale Corporation and Costco Wholesale Membership, Inc. (Costco), the California Board of Equalization (Board) and Abbott Laboratories, Inc. (Abbott) to recover amounts he paid in sales tax reimbursement on purchases of Abbott's product Ensure.

Littlejohn alleged that because Ensure is properly categorized as a food product no sales tax was actually due on his purchases. Costco should not have charged him sales tax reimbursement, and was under no obligation to pay and should not have paid sales tax to the state on its sales of Ensure.

Littlejohn based his claim on a cause of action identified by our Supreme Court in *Javor v. State Board of Equalization* (1974) 12 Cal.3d 790 (*Javor*), that held under "the unique circumstances" of that case, that the customer could sue "to compel defendant retailers to make refund applications to the Board and in turn require the Board to respond to these applications by paying into court all sums, if any, due defendant retailers." (*Id*. at p. 802.) Because this case does not involve allegations of unique

1

circumstances showing the Board has concluded consumers are owed refunds for taxes paid on sales of Ensure, we affirm.

BACKGROUND

The complaint alleges a putative class action against Costco and the Board. It alleges that on February 16, 2013, Littlejohn purchased a case of Ensure nutritional drinks at Costco and was charged sales tax reimbursement. Costco paid sales tax on this purchase to the Board even though, according to the complaint, the Board had "already in the first instance 'ascertained' that the Ensure products involved in this action are not subject to sales tax."[1] Costco allegedly collected sales tax reimbursement and paid sales tax on Ensure from August 2006 through the date of Littlejohn's purchase in 2013, although by the time the third amended complaint was filed it had stopped doing so for more than a year.

The complaint alleges in considerable detail, supported by documents issued by the Board, that during the period in question Ensure was classified as a food product exempt from sales tax, not a nutritional supplement that would have been subject to tax. For some time before 2002, it appears Ensure was considered a food product not subject to sales tax. In 2002 the labelling on Ensure was changed and, due to the labelling change, at that time the Board considered Ensure to be a nutritional supplement. But the labeling was changed again in 2006, and the Board, in an informal opinion of tax counsel, advised a taxpayer that Ensure qualified as "a food product for human consumption, the sales of which are not subject to tax." In March 2013 a letter from one of the Board's auditors, in response to an e-mail inquiry, restated the position that sales of Ensure were not taxable. This position was also restated in the Board's September 2013 Tax Information Bulletin stating that: "The products Ensure [and] Ensure Plus . . . are not currently taxable because their labels meet the definition of a nontaxable food product."

The complaint asserted two causes of action against Costco, and a third cause of action against Costco and the Board. The first alleged that Costco breached an implied

---

[1] The specific products Littlejohn claims are not subject to tax are Ensure, Ensure Plus and Ensure Clinical Strength (Ensure).

contract with its customers by charging sales tax reimbursement on products not actually subject to tax. The second alleged that Costco engaged in unfair business practices by representing to customers that sales of Ensure were taxable and collecting sales tax reimbursement on such sales. The third cause of action presents the issue before us. It is predicated on *Javor,* and alleges the Board is a constructive trustee of the sales tax erroneously collected and paid to the state by Costco on its sales of Ensure. Accordingly, that sales tax should be refunded to Costco and in turn refunded to the Costco customers who paid the sales tax reimbursement. This cause of action seeks to require the court to "[o]rder Costco to immediately apply to the full extent it legally can do so to the [Board] for reimbursement of all sales tax it paid to the [Board] due to sales of Ensure in order to immediately return to the class the sales tax reimbursement it paid to Costco for Ensure and to pay interest on said sums from the date they were paid to Costco to the full extent allowed by law."

Defendants demurred. Littlejohn opposed the demurrers and moved to compel Costco to file a refund claim with the Board. The court sustained the demurrers without leave to amend and denied the motion to compel. The court concluded that the judicially noticed documents in the record showed the Board had not resolved the question of whether Ensure was nontaxable during the relevant period. Specifically, it ruled that the opinion of counsel and other documents said to support the third cause of action were not the functional equivalent of the Board's determination in *Javor.* The court held that the documents were entitled to deference, but they did not have the same force of law as regulations adopted by the Board and were not binding.

Littlejohn's appeal is timely.

## DISCUSSION

1. The Claims Against Costco

    a. *Claims Premised on the Unfair Practices Act.*[2]

---

[2] Business and Professions Code section 17200 et seq.

In *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081 (*Loeffler*) our Supreme Court reviewed the history and development of California law on the issues raised by Littlejohn's complaint. In a brief overview, the Court summarized: "under California's sales tax law, the taxpayer is the retailer, not the consumer. In addition, the taxability question, whether a particular sale is subject to or is exempt from sales tax, is exceedingly closely regulated, complex, and highly technical. A comprehensive administrative scheme is provided to resolve these and other tax questions and to govern disputes between the taxpayer and the Board. Under these administrative procedures, it is for the Board in the first instance to interpret and administer an intensely detailed and fact-specific sales tax system governing an enormous universe of transactions. Administrative procedures must be exhausted before the taxpayer may resort to court. . . . [T]his comprehensive statutory scheme is inconsistent with consumer claims such as plaintiffs' by which a party other than the taxpayer would seek to litigate whether a sale is taxable or exempt." (*Loeffler, supra,* 58 Cal.4th at p. 1103.) For that reason the Court rejected unfair business practice claims against a retailer based on the allegation that the retailer had collected a sales tax reimbursement on take-out sales of coffee allegedly not subject to a sales tax, because resolution of the claims would require the court to determine the taxability of the transactions. For the same reason, the trial court clearly was correct in this case to sustain the demurrers to plaintiff's first and second causes of action. Both are based on the premise that the sale of Ensure is not taxable, which fact the court would have to determine to sustain the claim.

### b. Claim Premised on Javor

Article XIII, section 32 of our state constitution provides in part: "After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

As *Loeffler* described, sales tax is imposed on retailers for the privilege of selling tangible personal property, and it is the retailers, not the purchasing consumers, who pay the tax. What is commonly understood to be sales tax paid on transactions by consumers is really sales tax reimbursement paid to the retailer. These principles are particularly

4

relevant to actions or claims for refunds. It is the taxpaying retailer who may file a claim for a refund with the taxing agency after first paying sales tax, not the consumer or purchaser of goods. (*Loeffler, supra*, 58 Cal.4th at pp. 1104, 1107.)[3]

In *Decorative Carpets, Inc. v. State Board of Equalization* (1962) 58 Cal.2d 252 (*Decorative Carpets*), our Supreme Court held that legislative policy supported a constructive trust theory that would justify ordering a plaintiff retailer who sought and obtained a refund for overpayment of sales taxes to repay its customers who were charged the tax. (*Id.* at p. 255.) In reaching this holding, the court explained that the Board's "liability to refund taxes erroneously collected, however, is governed by statute (Rev. & Tax. Code, § 6901 et seq.) and the orderly administration of the tax laws requires adherence to the statutory procedures and precludes imposing on [the Board] the burden of making refunds to the taxpayer's customers. [The Board], however, has a vital interest in the integrity of the sales tax (*County of San Bernardino v. Harsh Calif. Corp., supra,* 52 Cal.2d 341, 345), and may therefore insist as a condition of refunding overpayments to plaintiff that it discharge its trust obligations to its customers. To allow plaintiff a refund without requiring it to repay its customers the amounts erroneously collected from them would sanction a misuse of the sales tax by a retailer for his private gain." (*Ibid.*)

In *Javor, supra*, 12 Cal.3d 790, our Supreme Court considered whether a customer could file a direct action against the Board for a refund of sales tax. In rejecting a direct action, the court observed that "to give customers a direct cause of action against the Board for all erroneously collected sales tax reimbursements which have already been paid to the Board by the retailer would neither be consonant with existing statutory

---

[3] Sales taxes were formerly administered by the defendant Board of Equalization. (*Loeffler, supra,* 58 Cal.4th at p. 1107.) In 2017, the functions of the Board relevant to this case were transferred to the California Department of Tax and Fee Administration. (Gov. Code § 15570.22; 2017 Stats. 2017, ch 16, § 5.) We will continue to refer to the Board in this opinion as the entity responsible for administering the tax.

We also deny appellant's request for judicial notice. The regulations of the Board that appellant seeks to have this court notice have been superseded by emergency regulations that pertain to the authority of the Department of Tax and Fee Administration to consider claims for refunds.

procedures nor with the import of *Decorative Carpets*." (*Id*. at p. 800.) Nonetheless, the court recognized that the Board had a duty 'to see that the customer obtains any refund made to the retailer." (*Ibid*.)

But *Javor* arose under "unique circumstances." (*Javor, supra*, 12 Cal.3d at p. 802.) There, the customer was seeking a refund of sales tax paid on a purchase price that included a repealed federal excise tax. The Board promulgated a regulation authorizing retailers who had collected and received refunds of the repealed tax to seek a refund of sales tax on the condition that they pay the refunded taxes to their customers. (*Id*. at p. 794.) The process required the retailer to demonstrate to the Board that a refund had been paid in order to receive a like amount from the Board. The court observed that "[u]nder the procedure set up by the Board the retailer is the only one who can obtain a refund from the Board; yet, since the retailer cannot retain the refund himself, but must pay it over to the customer, the retailer has no particular incentive to request the refund on his own. Despite this lack of incentive, the Board has not required the retailer to refund the total excessive amount collected, but rather has merely allowed retailers to collect a refund when the retailer is compelled to pay a refund to a customer who has demanded it." (*Id*. at p. 801.)

The *Javor* court recognized that there had been an urgency statute that arguably provided customers a cause of action against a retailer for the refund, but that statute had expired. (*Javor, supra*, 12 Cal.3d at p. 802.) "Therefore, purchasers can most effectively enforce their refund right by compelling retailers to claim their own refunds from the Board. The Board has admitted that it must pay these refunds to retailers. All that plaintiffs seek in this action is to compel defendant retailers to make refund applications to the Board and in turn require the Board to respond to these applications by paying into court all sums, if any, due defendant retailers. . . . [¶] We think that to require this minimal action from the Board is clearly mandated by the Board's duty to protect the integrity of the sales tax by ensuring that customers receive their refunds. . . . [¶] [A]llowing the Board to be joined as a party for these purposes in the customer's action

6

against the retailer is an appropriate remedy entirely consonant with the statutory procedures providing for a customer's recovery of overpaid sales tax." (*Ibid*.)

We know of no published case since *Javor* that has allowed a cause of action against the Board to proceed for the purpose of directing a retailer to file a claim for a refund of sales tax. In *Loeffler*, our Supreme Court confirmed that the exact contours of a *Javor*-type claim remain undefined: "The integrity of the tax system and avoidance of unjust enrichment, possibly of the retailer, but more probably of the state, in certain circumstances may support a *Javor*-type remedy for consumers. Plaintiffs, however, declined to pursue such a remedy, and we need not consider the exact showing required of consumers to demonstrate their entitlement to the *Javor* remedy." (*Loeffler, supra*, 58 Cal.4th at pp. 1133–1134.)

The most recent published case to reject a possible *Javor* cause of action is *McClain v. Sav-on Drugs* (2017) 9 Cal.App.5th 684, review granted June 14, 2017, S241471 (*McClain*). *McClain* distilled from *Decorative Carpets* and *Javor* three factors for courts to consider in deciding whether to recognize a *Javor* cause of action. They are: 1) whether the plaintiff has an available statutory remedy for a tax refund; 2) whether the proposed judicial remedy would be consonant with statutory tax refund procedures; and 3) whether there has been a "precursor determination" either by the Board or as a result of legal action by a taxpayer that a tax refund is due and owing. (*Id*. at p. 697.) *McClain* concludes that "[l]imiting a court's authority to fashion new tax remedies to situations involving all three of these requirements specifically reinforces the constitutional mandate, described above, that the *Legislature* have primacy in fixing the procedures by which tax refunds are obtained." (*Id*. at p. 698.) We agree.

Appellant argues this case is the one that should recognize a *Javor* cause of action. According to appellant, the August 21, 2006 informal opinion of the Board's tax counsel (annotation), a March 2013 letter from one of the Board's auditors, and the Board's September 2013 Tax Information Bulletin stating that some forms of Ensure are not taxable as a food product constitute a precursor determination of refund that provide the

7

unique circumstances warranting a *Javor* remedy. For the reasons that follow, we disagree.

In this case, there is no question that the first requirement identified in *McClain* is met. Appellant, a Costco customer, has no statutory remedy for a sales tax refund. Nor is the remedy he proposes, compelling Costco as the taxpayer to file a refund claim with the Board, in fatal conflict with the statutory scheme. But appellant has not shown that the Board made a precursor determination that sales tax paid on purchases of Ensure between May 30, 2009, and mid-2014 must be refunded.

In the most fundamental sense, the documents appellant relies upon to demonstrate the Board's position are substantively deficient for the simple reason that they say nothing of the propriety of refunds for retailers who paid taxes on sales of Ensure. The most that can be said is that for some time following a product labelling change in 2002, the Board's counsel opined that sales of specified Ensure products were subject to tax. In 2006 counsel's view changed and it concluded sale of those products were not taxable. However, none of the documents were issued in response to an inquiry about refunds or address whether tax paid by retailers on sales of Ensure products would be refunded. In sharp contrast, in *Javor* "[t]he Board ha[d] admitted *that it must pay these refunds to retailers*." (*Javor, supra*, 12 Cal.3d at p. 802, italics added.) The Board has made no such determination in this case.

More importantly, the Board's regulations and case law make clear that the documents plaintiff relies upon do not have the force of law and are not binding on the Board. Opinions of counsel, such as the one plaintiff relies upon issued in August 2006, have no precedential effect and may be relied upon only by the person seeking advice from the Board. (Cal. Code Regs., tit 18, § 1705.)[4] Of course, they are written on the

---

[4] The California Business Taxes Law Guide, volume 2, published by the Board provides the following explanatory note: "Annotations published in the Business Taxes Law Guides are summaries of the conclusions reached in selected legal rulings of counsel. 'Legal ruling of counsel' means a legal opinion written and signed by the Chief Counsel or an attorney who is the Chief Counsel's designee, addressing a specific tax

8

Board's letterhead and considered to be the opinions of the Board's counsel. But when the Board determines to issue a decision with binding effect, it does so in the form of a "precedential decision" of the Board. (Cal. Code Regs., tit. 18, § 5551, subd. (b)(4).)

In contrast, the purpose of advice letters of counsel is to provide *the requesting taxpayer* a safe harbor from tax liability. By inquiring of the taxability of a transaction or item for sale, the taxpayer can use the Board's reply as a defense to any claim. To that end, Revenue and Taxation Code section 6596 provides that if a person's "failure to make a timely return or payment is due to the person's reasonable reliance on written advice from the board, the person may be relieved of the [sales and use] taxes imposed . . . and any penalty or interest added thereto." As counsel for the Board advised this court in oral argument, there appear to be hundreds, if not thousands, of such letters issued each year. (See generally, Board of Equalization, Business Taxes Law Guide, Volume 2.) We are therefore concerned that holding counsels' replies to specific taxpayer inquiries to be a precursor determination sufficient to support a *Javor* cause of action will have a perverse effect on the integrity of our sales tax system. "[I]t is *presumed* that all "gross receipts" are subject to the sales tax unless the contrary is established by the retailer. (§ 6091.) This presumption exists in order to ensure 'the proper administration of [the sales tax law] and to prevent evasion of the sales tax. . . .' [Citation.] Taxpayers' exemption claims must be supported by adequate records. [Citation.] The burden of proof is on the taxpayer." (*Loeffler*, *supra*, 58 Cal.4th at p. 1107.) Moreover, the willingness of taxpayer retailers to seek safe harbor written advice from the Board could be stifled if doing so would expose them to potential litigation under a *Javor* scenario and the burdens

application inquiry from a taxpayer or taxpayer representative, a local government, or Board of Equalization staff.

Business Taxes Annotations are a research tool to locate selected legal rulings of counsel. Annotations are intended to provide guidance regarding interpretation of Board statutes and regulations as applied by staff to specific factual situations. Annotations do not have the force or effect of law. Although annotations are synopses of past advice provided by Board's legal staff, the advice is not binding and may be revised at any time."

9

of preparing an administrative claim for refund and distributing refunded amounts to potentially countless consumers.[5]

For similar reasons that we decline to give legal effect to the opinion of counsel, we decline to give effect to the March 2013 letter by a Board auditor. The March 13 letter is written in response to an e-mail inquiry by a consumer. It is not advice to a taxpayer, nor does it address particular sales transactions over a specific time. It merely directs the inquiring consumer to address a possible claim of refund with the appropriate retailer. Neither is the information in The Tax Information Bulletin a precursor determination by the Board, for the simple reason that it is a newsletter, not a decision of the Board, a legal opinion, or even a reply to a specific factual inquiry. The Tax Information Bulletin provides general information to inform taxpayers and interested parties "in simplified terms the most common areas of noncompliance" they are likely to encounter. (See Rev. and Tax. Code, § 7084.) There is no basis to give this document legal effect.

Appellant in oral argument said the decision most favorable to his position is *Loeffler*. Presumably, he is referring to the court's suggestion that a *Javor* remedy lies "when neither the Board nor the taxpayer has an interest in 'ascertaining' whether excess reimbursement has been charged." (*Loeffler*, *supra*, 58 Cal.4th at p. 1122.) However, in light of the Board's vital interest in the integrity of our state's tax laws, we decline to infer, absent some particular allegation, that the Board has no interest in ascertaining whether excess sales tax reimbursement has been charged to a California consumer.

*Loeffler* acknowledged informal remedies available to consumers who believe they have been charged excess sales tax reimbursement. The Board fields a large number

---

[5] Filing a claim for refund of sales tax is subject to a strict limitation period and can be a fairly complex and burdensome process. (See Cal Code Regs. tit. 18, §§ 5230, 5231, 5232; *Barnes v. State Bd. of Equalization* (1981) 118 Cal.App.3d 994 [Board remedy for refund not exhausted when retailer failed to produce date of each sale or purchase, contract or invoice number for each sale, sales/purchase price for each item, periods in which tax was paid and amount of state (versus local) sales tax paid on each item].)

of telephone calls and e-mails from the public; tips from informants can lead to taxpayer audits; complaints can lead to deficiency determinations; and interested persons may petition for the Board to adopt, amend or repeal regulations, or file declaratory relief actions challenging the imposition of a tax. (*Loeffler*, *supra*, 58 Cal.4th at p. 1123.)

Finally, *Loeffler*'s suggested remedy of declaratory relief actions to challenge the imposition of sales tax as inconsistent with statute or constitution (see ibid) is not toothless. To the contrary, such actions can lead to a legislatively crafted refund remedy that takes into account public policy and the administrative burden and expense of processing claims. In *Rider v. County of San Diego* (1991) 1 Cal.4th 1 (*Rider*), the court declared unconstitutional a supplemental sales and use tax designed to pay for construction of a county jail and youth facility because it was not approved by two-thirds of San Diego's voters as required under Article XIII A, section 4 of our state constitution. In response to *Rider*, the legislature crafted a refund remedy for consumers with a threshold of purchases in excess of $5,000. In affirming the legislative refund scheme and rejecting a *Javor*-type class remedy, the Court of Appeal observed: "[S]ince a consumer with under $5,000 in purchases would be entitled to a return of less than $25, the administrative costs associated with the court-ordered scheme of direct refunds to all consumers would likely neutralize a substantial portion of the scheme's asserted benefits. Thus, given the great latitude accorded the Legislature in tax matters, we conclude the statutory $5,000 threshold requirement for refunds is not impermissible." (*Kuykendall v. State Bd. of Equalization* (1994) 22 Cal.App.4th 1194, 1214.) This kind of pragmatic approach that may be employed by a legislative body counsels us not to employ a judicially created remedy when the entitlement to a refund of sales tax and the administrative burdens of a refund process are unclear.

We are aware that *Loeffler* cautions: "The integrity of the tax system and avoidance of unjust enrichment, possibly of the retailer, but more probably of the state, in certain circumstances may support a *Javor*-type remedy for consumers." (*Loeffler*, *supra*, 58 Cal.4th at p. 1133.) But the state is not unjustly enriched when sales taxes are overpaid due to a taxpayer's good faith misinterpretation of his or her obligation to pay

11

tax. "One may not recover under a theory of unjust enrichment a payment made to a unit of government unless it was made under coercion. A person who, at the time of payment misinterprets the law to his detriment does not thereby gain a right of recovery; he must have paid as a result of compulsion." (*Reynolds v. City and County of San Francisco* (1975) 53 Cal.App.3d 99, 101.) There is no allegation here that Costco paid sales tax on Ensure under protest or as a result of any threatened enforcement action or other government coercion.

Our review of the foregoing authorities lead us to conclude that a *Javor* remedy should be limited to the unique circumstances where the plaintiff's allegations show that the state has been unjustly enriched by the overpayment of sales tax, and the Board concurs that the circumstances warrant refunds to consumers. Requiring such allegations ensures that courts will be faithful to our state constitution's delegation of authority to craft a remedy for the overpayment of sales tax to the Legislature, and to the statutory scheme that allows the Board to first take into account the timeliness of any claims for refund, the likely amounts involved and the burdens and costs implicit in its refund procedure.

2. The claims against Abbott

Plaintiff's second amended complaint also contains two causes of action against Abbott, the manufacturer of Ensure. It alleges the existence of an unspecified agreement under which Costco purchases Ensure from Abbott that is "in force regardless of who actually sells the product to Costco." The pleading alleges, "Although Abbott does or may also use distributors or middlemen to sell the product it remains liable for all promises made in the chain of distribution to Costco to induce it to stock and sell Ensure." The agreement allegedly contains an "implied and/or express" provision that Abbott would "alert Costco of a potential tax consequence of all material ingredient and label changes of Ensure and . . . take all reasonable steps to alert Costco of changes that do, or are reasonably likely to, affect sales tax consequences and of the fact that any such changes do or are likely to affect sales tax status." Plaintiff and all persons who

12

purchased Ensure from Costco allegedly are third party beneficiaries of the agreement. The second amended complaint alleges one cause of action for breach of the alleged agreement and another cause of action alleging that Abbott's conduct violated Business and Professions Code, sections 17200 and 17500 "by failing to adequately notify retailers, including Costco, that the sales tax status of Ensure had changed, was likely to change, and/or that the label or ingredients had changed."

The trial court sustained Abbott's demurrer to both causes of action without leave to amend. The court explained, among other things, that "the complaint makes it plain that Abbott had nothing to do with the collection or payment of the taxes. . . . [T]here is no suggestion that Abbott was under a duty to notify the retailers of [the fact that the tax status of the product had changed], or how plaintiff would in some way be the beneficiary of that duty." We agree with the trial court. From the pleading it is far from clear that there was ever any agreement between Abbott and Costco, much less one that contains either an express or implied provision such as plaintiff describes or with respect to which all Costco customers would be third party beneficiaries. Moreover, no facts are alleged that would give rise to a duty on Abbott's part to advise retailers of the sales taxability of its products in the various jurisdictions in which the products are sold, or that would create a duty to customers paying sales tax reimbursement on their purchases of the product. Plaintiff has cited no authority supporting these claims, nor has he suggested any facts he might add to the complaint were leave to amend granted that would establish a right to relief against Abbott. Abbott's demurrer was properly sustained without leave to amend.

DISPOSITION

The judgment is affirmed.

13

_____

Siggins, J.


I concur:



_____

McGuiness, Acting P.J. [*]


_Littlejohn v. Costco_, A144440

---

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

POLLAK, J., Concurring and Dissenting.

This appeal presents the recurring question of whether there is a remedy for a customer who has paid sales tax reimbursement to a retailer upon the purchase of an item on which no sales tax was due but sales tax was nonetheless remitted by the retailer to the California State Board of Equalization (Board).[1]  There is no question that only the retailer may request a refund from the Board, that only the Board may determine in the first instance whether an item is subject to payment of a sales tax, and that the customer may not recover any excess sales tax reimbursement from the retailer under consumer protection theories.  It is also clear that the retailer may recover a refund only to the extent that the refund is passed on to the customer who paid the sales tax reimbursement.  Thus, neither the retailer who paid the sales tax nor the Board that received it may have an incentive to initiate proceedings authorized by the Revenue and Taxation Code to determine whether a refund is due.  The question therefore comes down to whether the customer may compel the retailer to request a refund from the Board.  The majority in effect concludes that, as a practical matter, the customer may never do so.  In my view, the majority's conclusion is inequitable and inconsistent with the pronouncements of our Supreme Court, and overstates the problems that would arise from recognizing the customer's right to compel the submission of a refund application under appropriate circumstances.

In *Javor v. State Board of Equalization* (1974) 12 Cal.3d 790 (*Javor*) our Supreme Court held that under "the unique circumstances" of that case, such relief is available.  In the more recent case of *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081 (*Loeffler*), the court in a split decision held that in such a case the consumer may not recover from the retailer under consumer protection statutes because "the propriety of a reimbursement charge . . . turns on the taxability of a transaction [that] must be resolved in the first

---

[1] As the majority opinion notes, in 2017 the relevant functions of the Board were transferred to the California Department of Tax and Fee Administration.  (Gov. Code, § 15570.22; 2017; Stats. 2017, ch. 16, § 5.)  Like the parties and the majority opinion, I continue to refer to the Board as the agency responsible for administering the sales tax.

1

instance by the Board in the context of a procedure recognized in the tax code and applying the safe harbor measures contained in that code." (*Id*. at p. 1134.)  The court recognized, however, that "[t]he integrity of the tax system and avoidance of unjust enrichment, possibly of the retailer, but more probably of the state, in certain circumstances may support a *Javor*-type remedy for consumers" but the plaintiffs in that case had declined to pursue such a remedy.  (*Id.* at pp. 1133–1134.)  In *McClain v. Sav-On Drugs* (2017) 9 Cal.App.5th 684 (*McClain*), now under review by our Supreme Court (review granted June 14, 2017, S241471), a division of the Second Appellate District defined the circumstances under which a "*Javor*-type remedy" may be available but found them not to apply in that case.  I agree in large part with the three criteria articulated in *McClain* but disagree with the manner in which the criteria were applied in that case and in which the most significant criterion is applied by the majority in this case.

The third amended complaint (the complaint) of plaintiff Larry Littlejohn, the operative pleading with respect to the principal issues on appeal, alleges a putative class action against Costco Wholesale Corporation and Costco Wholesale Membership, Inc. (collectively, Costco) and against the Board.  The complaint alleges that on February 16, 2013, plaintiff purchased at a Costco store a case of Ensure nutritional drinks, on which he was charged sales tax reimbursement and Costco paid sales tax to the Board, although the Board had "already in the first instance 'ascertained' that the Ensure products involved in this action are not subject to sales tax."[2] The complaint alleges that Costco wrongly collected sales tax reimbursement and paid sales tax on the sale of Ensure from "at least August 2006" through the date of plaintiff's purchase on February 16, 2013, although as of the filing of the third amended complaint on December 26, 2014, it had discontinued doing so "for over a year."

---

[2] The specific products to which the complaint refers are "Ensure, Ensure Plus, and Ensure Clinical Strength." Unless otherwise indicated, all subsequent references in this opinion to Ensure are to the three products.

The complaint alleges in considerable detail, supported by attachments to the pleading, the facts evidencing the determination that Ensure, as a food product rather than a nutritional supplement, was not subject to sales tax during the period in question. Prior to 2002, Ensure was treated as a nontaxable food product. In 2002 there was a change in the label of Ensure; therefore, according to a tax information bulletin issued by the Board in December 2002: "The Board previously classified Ensure and Ensure Plus as exempt food because their labels did not describe the products as supplements. However, we have examined the current labels for Ensure and Ensure Plus, and the products are now labeled as 'nutritional supplements.' They also indicate a doctor should be consulted if the user intends to use the products as their sole source of nutrition. Because the labeling of these products has changed, the application of tax has also changed. *Grocery stores and other retailers that sell Ensure and Ensure Plus should report tax on their sales of those products.*" (Italics added.)

However, the label on Ensure was again changed in 2006. According to an informal opinion letter from the Board's tax counsel issued on August 21, 2006: "As you know, Regulation 1602(a)(5)(A) places its focus on the contents of the product's label. Thus, if the label changes, the tax consequences may also change. Based upon our examination of the current label for Ensure provided by the Taxpayer, we note . . . [the description of label contents]. [T]hus, *Ensure is not excluded as a food product under Regulation 1602(a)(4) (step two).* [¶] Notwithstanding the above conclusion, because Ensure comes in liquid form, we must next determine whether either Exclusion under Regulation 1602(a)(5)) applies (step three). If so, we must then determine whether Ensure qualifies as a complete dietary food (step four). In this regard, we note . . . [further description of label contents]. *Accordingly, we conclude that Ensure now qualifies as a food product for human consumption, the sales of which are not subject to tax.* (Reg. 1602(a)(4 & 5). However, if the assumptions made herein are inaccurate . . . then this opinion may be different." (Italics added.)

In a March 14, 2013 response to an inquiry from an individual who "explain[ed] that it is [his] understanding that Ensure nutritional drinks are not taxable and . . . need[s]

3

confirmation to show [his] retailer," Board counsel responded, "*The [Board] has determined that Ensure products such as Ensure, Ensure Plus and Ensure Clinical Strength are classified as food products and not food supplements. Therefore, the sales of Ensure products would be exempt from sales tax.*" (Italics added.) This opinion was repeated in the Board's September 2013 tax information bulletin, stating "*The products Ensure*$^{TM}$ [*and*] *Ensure Plus*$^{TM}$ *. . . are not currently taxable because their labels meet the definition of a nontaxable food product.*" (Italics added.)

The third cause of action of plaintiff's complaint, which presents the significant legal issue before us, alleges that the Board is a constructive trustee holding sales tax erroneously collected on Costco's sale of Ensure that should be refunded to Costco and in turn refunded to the customers who paid the sales tax reimbursement. The prayer requests, inter alia, "to the full extent allowed by [*Javor* and *Loeffler*] pursuant to the equitable powers of this court, . . . plaintiff prays that the court order Costco to immediately apply to [the] full extent it legally can do so to the [Board] for reimbursement of all sales tax it paid to the [Board] due to sales of Ensure in order to immediately return to the class the sales tax reimbursement it paid to Costco for Ensure and to pay interest on said sums from the date they were paid to Costco to the full extent allowed by law."

The trial court sustained the defendants' demurrer to the third cause of action, holding that "[t]he judicially noticed record shows that [the Board] has not resolved that Ensure was untaxable during the period relevant to this lawsuit." The court rejected plaintiff's argument that "the various positions taken by the [Board] in e.g., 2006 were . . . tantamount to the type of determination made by the taxing authorities in *Javor*."

For the reasons stated in the majority opinion, I agree that the trial court properly sustained demurrers to the first two causes of action of the complaint and to the causes of action alleged in a prior complaint against Abbott Laboratories, Inc. and Abbott Laboratories Sales, Marketing & Distribution Co. However, I disagree that the demurrers were properly sustained as to the complaint's third cause of action.

4

The Supreme Court's opinion in *Loeffler* contains a thorough history of the development of California law on the issues before us. In a brief overview the court summarized: "under California's sales tax law, the taxpayer is the retailer, not the consumer. In addition, the taxability question, whether a particular sale is subject to or is exempt from sales tax, is exceedingly closely regulated, complex, and highly technical. A comprehensive administrative scheme is provided to resolve these and other tax questions and to govern disputes between the taxpayer and the Board. Under these administrative procedures, it is for the Board in the first instance to interpret and administer an intensely detailed and fact-specific sales tax system governing an enormous universe of transactions. Administrative procedures must be exhausted before the taxpayer may resort to court. . . . [T]his comprehensive statutory scheme is inconsistent with consumer claims such as plaintiffs' by which a party other than the taxpayer would seek to litigate whether a sale is taxable or exempt." (*Loeffler, supra,* 58 Cal.4th at p. 1103.) For that reason the court rejected unfair business practice claims against a retailer based on the allegation that the retailer had collected a sales tax reimbursement on take-out sales of coffee allegedly not subject to a sales tax, because resolution of the claims would require the court to determine the taxability of the transactions. For the same reason, the trial court in the present case was correct in sustaining the demurrers to plaintiff's first and second causes of action, which both proceed on the premise that the sale of Ensure is not taxable, which fact the court would have to determine to sustain the claim.

*Loeffler* also reaffirmed, however, the recognition in a line of Supreme Court cases that "the Board bears some responsibility to consumers when excess sales tax has been remitted to it, given its 'vital interest in the integrity of the sales tax.' " (*Loeffler*, *supra*, 58 Cal.4th 1081, citing *Decorative Carpets, Inc. v. State Board of Equalization* (1962) 58 Cal.2d 252, 255 (*Decorative Carpets*).) In *Decorative Carpets,* the court held that a retailer that had paid excessive sales tax to the Board could recover a refund only if the refund was returned by the retailer to the customers that had paid the retailer sales tax reimbursement. "Ordering the return of the funds in question to the customers from

5

whom they were derived is consonant with legislative policy," the court held, referring to the policy underlying what was then section 6054.5 of the Revenue and Taxation Code.[3] (58 Cal.2d at p. 255.) The court further observed that although that statute had been enacted after the overpayments had been made in that case, "the Legislature never provided that customers are not entitled to recover from retailers amounts erroneously charged to cover sales taxes. Thus it was left to the courts to define the rights of the parties in this respect and to adopt appropriate remedies. It is still left to the courts to adopt appropriate remedies when excessive reimbursements have been collected by mistake and paid to the state." (*Id.* at p. 256.) The court held that "orderly administration of the tax laws requires adherence to the statutory procedures and precludes imposing on [the Board] the burden of making refunds to the taxpayer's customers" (*id.* at p. 255) but the court prohibited the taxpayer from obtaining a refund unless the funds were returned to the customers that had paid the reimbursement.

---

[3] All subsequent statutory references are to the Revenue and Taxation Code unless otherwise noted.

Section 6054.5 then provided in part: "When an amount represented by a person to a customer as constituting reimbursement for taxes due under this part is computed upon an amount that is not taxable or is in excess of the taxable amount and is actually paid by the customer to the person, the amount so paid shall be returned by the person to the customer upon notification by the Board of Equalization or by the customer that such excess has been ascertained. In the event of his failure or refusal to do so, the amount so paid, if knowingly computed by the person upon an amount that is not taxable or is in excess of the taxable amount, shall constitute an obligation due from him to this State."

In 1968, section 6054.5 was amended to apply to situations in which the taxpayer mistakenly as opposed to knowingly charged excess reimbursement. (Stats. 1968, ch. 501, § 1, pp. 1143-1144.) Section 6054.5 subsequently was repealed and has now been replaced by section 6901.5. (See *Loeffler, supra,* 58 Cal.4th at pp. 1117-1118.) The substance of these provisions remains the same: upon ascertainment by the Board that excessive sales tax has been paid, the taxpayer may either obtain a refund and remit the refund to the customers from whom it received sales tax reimbursement or permit the excess to be retained by the state. In a Board operations memorandum, the Board has recognized that "[i]f tax reimbursement in excess of the tax liability on a transaction is collected and paid to the State, the taxpayer has no further tax liability." (State Bd. of Equalization, operations memo No. 754 (Jan. 12, 1983) p. 1; see *Loeffler, supra,* at p. 1119.)

6

*Javor* is the only case of which we are aware recognizing and enforcing the right of a customer who paid an excessive sales tax reimbursement to compel the retailer to whom it was paid and who paid the excess sales tax to the Board to apply to the Board for a refund that would be passed back to the customer. As the court recognized, the circumstances in *Javor* were unique. Congress had retroactively repealed a federal excise tax on the sale of motor vehicles that had decreased the gross sales price on which the state sales tax on car purchases had been calculated, giving rise to excess sales tax payments. This caused the Board to issue a notification and operations memo to automobile dealers and other interested parties and a press release announcing that the excess was subject to refund provided that the dealer returned the amount of the refund to the customer that had paid the sales tax reimbursement. The court held that "purchasers can most effectively enforce their refund right by compelling retailers to claim their own refunds from the Board. The Board has admitted that it must pay these refunds to retailers. All that plaintiffs seek in this action is to compel defendant retailers to make refund applications to the Board and in turn to require the Board to respond to these applications by paying into court all sums, if any, due defendant retailers. [¶] We think that to require this minimal action from the Board is clearly mandated by the Board's duty to protect the integrity of the sales tax by ensuring that the customers receive their refunds. The integrity of the sales tax requires not only that the retailers not be unjustly enriched [citation], but also that the state not be similarly unjustly enriched. [¶] We hold that under the unique circumstances of this case a customer, who has erroneously paid an excessive sales tax reimbursement to his retailer who has in turn paid this money to the Board, may join the Board as a party to his suit for recovery against the retailer in order to require the Board in response to the refund application from the retailers to pay the refund owed the retailers into court or provide proof to the court that the retailer had already claimed and received a refund from the Board. We think that allowing the Board to be joined as a party for these purposes in the customer's action against the retailer is an appropriate remedy entirely consonant with the statutory procedures providing for a

customer's recovery of erroneously overpaid sales tax." (*Javor, supra*, 12 Cal.3d at p. 802.)

In *McClain,* in which numerous pharmacies had collected sales tax reimbursement and paid sales tax on purchases that the plaintiffs alleged were not subject to sales tax, the Court of Appeal sought to define the circumstances under which the pharmacies could be compelled to seek refunds as in *Javor.* The court held that "Although *Decorative Carpets* dealt with a 'greedy' retailer and *Javor* dealt with unmotivated retailers, both cases share three commonalities that, in our view, define the 'unique circumstances' to which *Javor* alludes and that are prerequisites to the judicial recognition of any new tax refund remedy." (*McClain, supra,* 9 Cal.App.5th at p. 697.) A court "may create a new tax refund remedy—and accordingly, *Javor'*s 'unique circumstances' exist—only if (1) the person seeking the new tax refund remedy has no statutory tax refund remedy available; (2) the tax refund remedy sought is not inconsistent with existing tax refund remedies; and (3) the Board has already determined that the person seeking the new tax refund is entitled to a refund, such that the refusal to create that remedy will unjustly enrich either the taxpayer/retailer or the Board." (*Id.* at p. 700.) The court held that none of the three prerequisites were present in that case.

Although I believe that the three criteria articulated by the court in *McClain* are consistent with the rulings of our Supreme Court and may fairly be taken as the conditions under which such equitable relief may be granted, I differ as to that court's application of these criteria.

As to the first prerequisite, the court held the plaintiffs were "not remedy-less" because they "may urge the Board to initiate an audit of the retail pharmacies' practices in collecting the sales tax or to conduct a deficiency determination of the retail pharmacies' sales tax payments. [Citations.] They can, as 'interested person[s],' petition the Board under the Administrative Procedures Act (Gov. Code, § 11340 et seq.) to compel the Board to 'adopt[], amend[], or repeal' Regulation 159.1, subdivision (b)(5) and the collection of sales tax under that regulation. [Citations.] And they can as 'interested person[s]' sue the Board under the Administrative Procedure Act for

declaratory relief 'as to the validity of Regulation 1591.1." (*McClain, supra,* 9 Cal.App.5th at pp. 700-701.) The majority in the present case and I agree that the right to request relief is not the same as a right to the relief itself. The ability to ask a retailer to submit a refund application is hardly a remedy if the retailer refuses to do so. Of course customers may *ask* retailers to submit refund applications, and citizens may *ask* public agencies to conduct audits of other entities or to modify their regulations, and they may *ask* a court for declaratory relief, but they are not entitled to demand any such relief. Treating the mere ability to exercise the rights of any citizen as precluding the right to compel a retailer to submit a refund application is tantamount to saying that there is never a right to compel submission of a refund application. Indeed, applying the condition in this manner would have precluded the remedy afforded in *Javor.*

The majority here and I also disagree with the *McLain* court's analysis of the second factor. Relying in part on observations in the *Loeffler* opinion, the court in *McClain* held that "judicial recognition of a right of customers to sue retailers and the Board for a sales tax refund when the Board has yet to determine whether any refund is due is inconsistent with at least two provisions of the Revenue and Taxation Code." (*McClain, supra,* 9 Cal.App.5th at p. 701.) The import of this statement in part turns on what is required to establish a Board determination, addressed below. However, the asserted inconsistency between recognizing a customer's right to compel a retailer to submit a refund application and the statutory waiver provisions to which the court in *McClain* referred[4] is not convincing. The Supreme Court in *Loeffler* held it would be inconsistent with those provisions to hold retailers civilly liable to their customers for

---

[4] Section 6905 provides: "Failure to file a claim within the time prescribed in this article constitutes a waiver of any demand against the State on account of overpayment." Section 6901.5 provides: "When an amount represented by a person to a customer as constituting reimbursement for taxes due under this part is computed upon an amount that is not taxable or is in excess of the taxable amount and is actually paid by the customer to the person, the amount so paid *shall be returned* by the person to the customer upon notification by the Board of Equalization or by the customer that such excess has been ascertained" (italics added), but that if the person (i.e., the retailer) refuses to do so the amount so paid "shall be remitted by that person to this state."

9

failing to request a refund from the Board. (*Loeffler, supra,* 58 Cal.4th at p. 1129.) Remitting the excess sales tax to the Board provides the retailer with a "safe harbor" from customer claims seeking to impose liability on the retailer for having collected excessive sales tax reimbursement. But, as the court long ago stated in *Decorative Carpets* and quoted in *Loeffler,* " 'the Legislature never provided that customers are *not* entitled to recover from retailers amounts erroneously charged to cover sales taxes.' " (*Loeffler,* p. 1112.) And as the court reaffirmed in *Javor,* also repeated in *Loeffler,* " 'the Board is clearly mandated by the Board's duty to protect the integrity of the sales tax by ensuring that the customer received their refunds. The integrity of the sales tax requires not only that the retailers not be unjustly enriched [citation], but also that the state not be similarly unjustly enriched.' " (*Loeffler,* p. 1116.)

Fundamental principles embedded in the Revenue and Taxation Code are that payment of the sales tax is an obligation of the party selling an item subject to the tax, and that the taxability of a transaction is to be determined (or "ascertained") by the Board in the first instance. The inconsistency with the statutory scheme that the entire line of Supreme Court cases recognizes and precludes would arise from permitting the purchaser of a product—not the payer of the sales tax—to seek to recover directly from the Board an amount that it claims in judicial proceedings did not constitute reimbursement of a lawful sales tax. No such inconsistency arises, however, if a seller either voluntarily or under compulsion seeks a refund from the Board. While sections 6905 and 6901.5 confirm that a seller who does not request a refund waives the right to a refund and to the recoupment of any excess sales tax it may have paid, those provisions do not address whether a seller may be compelled to make that request by one who is the true party in interest bearing the financial impact of the payment of a tax that was not owing. While a retailer incurs no civil liability for waiving its right to a refund, that is not to say that as a matter of the equities also recognized in the line of Supreme Court cases, the retailer may not be prohibited from making such a waiver, to the detriment of those who have borne the cost of the erroneous tax payment. (See *Decorative Carpets, supra,* 58 Cal.2d at p. 255.) Indeed, in *Loeffler* the court, referring to the final subparagraph of regulation

10

1700, subdivision (b)(6), stating that the regulation does not limit the rights of customers to pursue refunds from persons who collected excess tax reimbursement,[5] observed that "[t]he regulation reasonably may be interpreted to refer to our recognition that, when neither the Board nor the taxpayer has an interest in 'ascertaining' whether excess reimbursement has been charged, in limited circumstances consumers may file an action to require the taxpayer to seek a refund." (*Loeffler, supra,* 58 Cal.4th at p. 1122.) Under the *McClain* view, the limited circumstances would in effect be no circumstances.

The nub of the matter comes down to the third prerequisite identified in *McClain*: "the Board has already determined that the person seeking the new tax refund is entitled to a refund." (*McClain, supra,* 9 Cal.App.5th at p. 690.) In that case, the court held that the Board had not made such a determination with respect to the sale of the skin puncture lancets and test strips there in question, and that an opinion letter from Board staff was insufficient to establish such a determination. The opinion letter in that case was very different from the unequivocal opinions given in the present case, indicating, so far as can be determined from the appellate opinion, that some transactions were and others were not taxable, leaving the taxability of particular sales still to be determined.[6] The trial court in the present case rejected the contention that "[t]he various positions taken by the [Board] in e.g., 2006 were indeed tantamount to the type of determination made by the taxing authorities in *Javor*." In support of the trial court's conclusion, the Board argues that plaintiff "misunderstands the nature of the Board documents" on which he relies. The Board explains: "Any taxpayer or member of the public may make an inquiry to the

---

[5] "The provisions of this regulation with respect to offsets do not necessarily limit the rights of customers to pursue refunds from persons who collected tax reimbursement from them in excess of the amount due." (Cal. Code Regs., tit. 18, § 1700, subd. (b)(6).)

[6] The appellate opinion refers to "a 2003 opinion letter sent by a Board staff member arguably setting forth additional prerequisites to application of Regulation 1591.1's exemption" which was not a binding determination of the Board concerning the taxability of any specific transaction. (*McClain, supra,* 9 Cal.App.5th at p. 702.) The court stated it was an "undisputed fact that the Board has yet to determine that all of the sales the customers challenge fall within the ambit of Regulation 1591.1's exemption." (*Ibid.*)

11

Board regarding the interpretation of tax laws within the Board's jurisdiction. These questions are routed to a member of the Board's staff. Their responses, which may be memorialized in a letter or memorandum, do not constitute the determination of the Board as a whole. The Board has made clear that they do not have the effect of law or bind the Board. (Cal. Code Regs., tit. 18, § 5700, subd. (a)(1) & (2).)[7] . . . [¶] A tax bulletin is a newsletter that summarizes the conclusions of recent opinion letters. Obviously, a tax bulletin cannot carry more weight than the opinion letters on which they are based." The majority opinion here, with which I respectfully disagree, accepts the Board's contention, pointing out that "the Board's regulations and case law make clear that the documents plaintiff relies upon do not have the force of law and are not binding on the Board." (Maj. opn., *ante*, p. 9.)

Although the letter opinions of Board counsel and the Board's tax bulletins do not have the force of law and are not binding on the Board, I submit they may not be so readily disregarded. Unlike the situation in *McClain,* the opinions here are specific and unambiguous, referring to all sales of a particular branded product. The opinion letters are written on the Board's letterhead and the Tax Information Bulletins are issued quarterly by the Board, listing the members of the Board and contact information for the Board. Although the Board may not be bound by opinions stated in these materials, the opinions undoubtedly are issued with the Board's approval and within the scope of the staff's official responsibilities. The opinion letters are issued for the purpose of guiding the taxpayer requesting the opinion, and the tax bulletins are issued with the expectation that other taxpayers will rely on those opinions. When these opinions state, as they do

---

[7] These provisions contain two definitions for purposes of the regulation: "(1) 'Annotations' are published in either the Business Tax Law Guide or the Property Tax Law Guide and are summaries of the conclusions reached in selected legal rulings of counsel. Annotations do not embellish or interpret the legal rulings of counsel which they summarize and do not have the force and effect of law. (2) 'Legal ruling of counsel' means a legal opinion written and signed by the Chief Counsel or an attorney who is the Chief Counsel's designee, addressing a specific tax application inquiry from a taxpayer or taxpayer representative, a local government agency, or board staff." (Cal. Code Regs., tit. 18, § 5700, subd. (a)(1) & (2).)

here, that a specifically identified item is not subject to sales tax, it is a reasonable inference that the Board in fact considers sale of the item not to be taxable. At a minimum these materials make a prima facie showing that in the Board's view the item is not taxable.

The cases are uniform in holding that the court may not in the first instance determine the taxability, or nontaxability, of a particular product. Absent an express indication from an authorized Board spokesperson concerning the taxability of an item, the court would necessarily be required to make that analysis before concluding that there has been an overpayment and directing a taxpayer to submit a refund application. However, the court need not engage in such an analysis to recognize a prima facie showing that it is the Board's view that sale of a particular item is not subject to sales tax. Opinion letters from Board counsel and explicit advice contained in the Board's tax information bulletin, such as those before us,[8] suffice to make such a showing without reference to the analysis underlying the opinion. When a refund application a taxpayer had been ordered to submit would come before the Board, the Board would determine whether the opinion correctly reflects its determination of the taxability of the item in question. The Board could grant or deny the application. The court would have made no determination of taxability in the first instance.

As the Supreme Court first observed in *Decorative Carpets,* it has been "left to the courts to adopt appropriate remedies when excessive reimbursements have been collected by mistake and paid to the state." (*Decorative Carpets, supra,* 58 Cal.2d at p. 256.) In my view, recognizing the sufficiency of a prima facie showing such as has been made here to compel the submission of a refund application is such an appropriate remedy. In this manner overpayments may be recovered by the person who indirectly bore the

_____

[8] The complaint acknowledges that for a period starting in 2002 Ensure was subject to sales tax because of a change in its labelling, as stated in a 2002 tax information bulletin. However, the complaint alleges that Ensure was "not subject to sales tax for any purpose at all times since at least August 2006" and seeks no relief with respect to earlier time periods. (Moreover, the complaint does not question the applicability of the three-year limitations period in section 6902.)

unjustified cost, unjust enrichment to either the seller of the taxed item or the state would be avoided,[9] and there would be no inconsistency with statutory provisions. Contrary to the statement in the majority opinion, the integrity of the sales tax system would thus be enhanced.

There is no basis for the majority's concern that recognizing "a *Javor* cause of action will have a perverse effect on the integrity of our sales tax system." (Maj. opn., *ante,* p. 10.) Recognizing such a cause of action is in no way inconsistent with the presumption that gross receipts are subject to the sales tax. The majority says that "the willingness of taxpayer retailers to seek safe harbor written advice from the Board could be stifled if doing so would expose them to potential litigation under a *Javor* scenario." (*Ibid.*) This fear assumes that retailers would disregard the advice received from the Board. To the contrary, in questionable cases retailers would be encouraged to obtain the Board's advice with the intention of following the advice, obtaining safe harbor protection, and avoiding the potential of being compelled to submit a refund application.[10]

---

[9] The statement in the majority opinion that "the state is not unjustly enriched when sales taxes are overpaid due to a taxpayer's good faith misinterpretation of his or her obligation to pay tax" (maj. opn., *ante*, p. 12) directly contradicts the Supreme Court's acknowledgement—and common sense—that the Board's receipt and retention of a tax that was not due does constitute unjust enrichment to the state. (*Loeffler, supra,* 58 Cal.4th at p. 1133.) The majority's citation to *Reynolds v. City and County of San Francisco* (1975) 53 Cal.App.3d 99, 101 for the proposition that one may not recover for a payment mistakenly made to a government entity unless the payment was made under coercion overlooks the fact that the Board has established a procedure for the refund of overpayments; the only question is whether one who was harmed by the overpayment may require the taxpayer to make use of that procedure.

[10] While a retailer that has been collecting sales tax on an item may be concerned that an opinion letter indicating the item is not taxable could prompt demands that it seek a refund for the tax remitted on past sales, the greater concern would seem to be with respect to avoiding that possibility with respect to future sales. Opinion letters presumably are requested to obtain advice with respect to sales that will be made, or continue to be made, in the future.

Recognizing a customer's right to compel submission of a refund application undoubtedly would present some practical issues. As the Supreme Court pointed out in *Loeffler*, the taxpayer bears the burden of proving the right to a refund and "may recognize that it has failed to retain records adequate to carry its burden of establishing it is entitled to an exemption or has overpaid." (*Loeffler*, *supra*, 58 Cal.4th at p. 1129.) Submitting a refund claim may entail considerable cost in collecting data and engaging in proceedings before the Board. In some cases it may be unreasonable to compel a seller to incur substantial costs to obtain a de minimis recovery for the benefit of the customer who paid the tax reimbursement. Such problems, however, are not insurmountable. An order compelling the submission of a refund application would be equitable and therefore could include such conditions as equity demands. The court might condition its order on the customer performing much of the work necessary to prepare the refund application, or reimbursing the taxpayer for costs necessarily incurred in submitting the application. If the action proceeds as a class action, the refund application might seek a refund only for the excess tax paid on sales to class members who submit evidence of their purchase and a refund request. If not a class action, it might be sufficient to apply for a refund of the excess tax paid on the sale to the individual requesting the refund. Appropriate factors for the court to consider in fashioning appropriate conditions would seem to include the amount of the excess tax involved, the effort that will be required to collect data and submit the application, and the reasonableness of the taxpayer having paid the excess tax given any notice of which the taxpayer was or should have been aware.

In all events, the remedy would not likely be utilized with undue frequency. It would be available only when opinion letters or Board publications have unqualifiedly indicated that no sales tax, or a lesser sales tax, is payable on the sale of a specific item. The disregard of opinion letters and tax information bulletins with the clarity and specificity of those in this case in all likelihood is a unique circumstance. Moreover, because such a remedy is available, retailers and others would be encouraged to carefully determine whether tax is due upon sale of the products they sell and to avoid overpayments that come out of the pockets of their customers. And, consistent with the

15

majority's reference to the possibility of legislative action, the Legislature would retain the ability to enact facilitating procedures or to qualify taxpayers' rights should experience indicate that the burdens of enforcement outweigh the benefits of providing redress to aggrieved taxpayers.  Absent further legislation, however, the Supreme Court has said it is for the court to fashion an appropriate remedy.  The conclusion reached by the majority effectively precludes any such relief.

I would reverse the dismissal of the third cause of action and otherwise affirm the judgments.


_____

Pollak, J.

16

Trial Court:                                          San Francisco City and County Superior

                                                     Court


Trial Judge:                                         Honorable Curtis E.A. Karnow

Counsel:

Daniel Berko, Carlos Jato for Plaintiff and Appellant.


Morrison & Foerster, Miriam A. Vogel, David F. McDowell, Purvi G. Patel, for
Defendants and Respondents, Costco Wholesale Corporation and Costco Wholesale
Membership, Inc.


Winston & Strawn, Robb C. Adkins, Charles J. Moll III, Krista M. Enns, for Defendants
and Respondents, Abbott Laboratories, Inc, and Abbott Laboratories Sales, Marketing &
Distribution Co.


Kamala D. Harris, Attorney General, Diane Shaw, Acting Senior Assistant Attorney
General, Nhan T. Vu, Deputy Attorney General, for Defendant and Respondent,
California State Board of Equalization.