Filed 8/26/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STARBUZZ INTERNATIONAL, INC., et al., | C101143 |
| Plaintiffs and Appellants, | (Super. Ct. No. 23WM000060) |
| v. | |
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, James Arguelles, Judge. Affirmed.

Dakessian Law and Mardiros H. Dakessian for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Tamar Pachter, Senior Assistant Attorney General, Craig D. Rust and Daniel Robertson, Deputy Attorneys General, for Defendant and Respondent.

Appellants Starbuzz International, Inc. and Starbuzz Tobacco, Inc. (together, Starbuzz) successfully prosecuted two administrative refund claims for excise taxes paid under the Cigarette and Tobacco Product Tax Law (Rev. & Tax Code, § 30001 et seq.;

Tobacco Products Tax Law).[1]  Respondent California Department of Tax and Fee Administration (the Department) refused to immediately pay the refunds, stating section 30361.5 first required a review of sales records for the relevant period to ensure that excess amounts had been paid by Starbuzz, rather than its customers.[2]

Starbuzz filed a petition for writ of mandate seeking an order directing the Department to issue the refunds.  The petition argued the Department had a ministerial duty to issue the refunds and was barred from requesting sales records by the doctrine of res judicata.  The trial court rejected the res judicata argument, denied the petition, and entered judgment in the Department's favor.  Finding no error, we will affirm.

## I.  BACKGROUND

The Department administers the Tobacco Products Tax Law, which imposes an excise tax on the distribution of cigarettes and tobacco products in the state.  (§ 30108.) Starbuzz distributed shisha, a smokeable product containing molasses, flavorings, and tobacco, during the period from October 1, 2012, through September 30, 2015 (the claim period).[3]  During that time, the Tobacco Products Tax Law defined "tobacco products" as including "all forms of cigars, smoking tobacco, chewing tobacco, snuff, and any other articles or products made of, or containing at least 50 percent, tobacco."  (§ 30121,

---

[1] Undesignated statutory references are to the Revenue and Taxation Code.

[2] The Department is the successor entity of the State Board of Equalization (the Board). (*California Dept. of Tax and Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 927; Gov. Code, §§ 15570, 15570.20, 15570.22.)  References to the "Department" and "Board" refer to the same administrative entity.

[3] Shisha is heated and smoked in a water pipe known as a hookah.

former subd. (b).)[4]  Starbuzz paid more than $2.8 million in excise taxes under the Tobacco Products Tax Law for the distribution of shisha during the claim period.

A.     *The Refund Claims and Office of Tax Appeals Opinions*

Starbuzz filed refund claims with the Board in November 2015.  The refund claims argued Starbuzz distributed shisha containing less than 50 percent tobacco during the claim period, and therefore, the shisha was not a "tobacco product" within the meaning of section 30121, former subdivision (b), and not subject to the excise tax.  The Department's Business Tax and Fee Division disagreed, and the Appeals Bureau denied the claims.

Starbuzz appealed to the Office of Tax Appeals.  The "sole issue" presented for decision was whether the shisha that Starbuzz distributed during the claim period was a "tobacco product" within the meaning of section 30121, former subdivision (b).  Following a hearing, the Office of Tax Appeals issued an opinion on April 28, 2021, (the first OTA opinion) holding the statutory definition of "tobacco products" was ambiguous and resolving the ambiguity in favor of Starbuzz.  The Office of Tax Appeals thus concluded that Starbuzz's shisha distributions were not "tobacco products," and not subject to the Tobacco Products Tax Law.  The Office of Tax Appeals ended the first opinion with the following disposition:  "[The Department's] actions denying [Starbuzz's] refund claims are reversed and [Starbuzz's] refund claims are granted in full."  This was not the last word on the subject.

---

[4] Section 30121 has since been amended by initiative measure.  (§ 30121, subd. (b), amended by Prop. 56, § 3.1, approved Nov. 8, 2016, operative Apr. 1, 2017.)  As amended, subdivision (b) now defines "tobacco products" as including, but not limited to, "a product containing, made, or derived from tobacco or nicotine that is intended for human consumption, whether smoked, heated, chewed, absorbed, dissolved, inhaled, snorted, sniffed, or ingested by any other means, including, but not limited to, cigars, little cigars, chewing tobacco, pipe tobacco, or snuff, but does not include cigarettes."  (§ 30121, subd. (b).)  Tobacco products also include electronic cigarettes.  (*Ibid.*)

3

The Department filed a petition for rehearing, which was granted. There followed some 12 months of procedural wrangling in Orange and Los Angeles County Superior Courts, the details of which need not be recounted here. It suffices to say that Starbuzz and the Department eventually agreed to submit their dispute to another panel of administrative law judges for the Office of Tax Appeals.

The matter was presented to the second panel of administrative law judges in January 2023. This time, the panel was charged with resolving two issues: (1) whether there were grounds for granting the petition for rehearing, and (2) whether the shisha distributed by Starbuzz during the claim period was subject to the Tobacco Products Tax Law. The second panel issued an opinion on rehearing on March 15, 2023 (the second OTA opinion). The second OTA opinion concluded the Department failed to establish grounds for rehearing and consequently found moot the question whether Starbuzz's shisha was subject to the Tobacco Products Tax Law. The second OTA opinion reinstated the first OTA opinion, and ended with the same disposition, reversing the Department's denial of the refund claims and stating the claims were "granted in full." This is where the current dispute begins.

B.    *The Current Dispute*

Armed with the first and second OTA opinions (together, the OTA opinions), Starbuzz wrote the Department to ask that checks for the refund claims be sent to its counsel. The Department responded that the matter needed to be reviewed for excess tax reimbursement before refunds could be issued. To facilitate that review, the Department asked that Starbuzz provide records showing that taxes collected from customers during the claim period were ultimately refunded to them. Starbuzz objected and a flurry of correspondence ensued. Those communications failed to resolve the matter, and the instant action was born.

Starbuzz filed the operative petition for writ of mandate on August 3, 2023. (Code Civ. Proc., § 1085.) The petition sought a peremptory writ of mandate directing the

4

Department to pay refunds to Starbuzz in the amount of $2,818,739. The Department answered the petition.

Starbuzz moved for judgment on the merits. As relevant here, Starbuzz argued the Department had a ministerial duty to issue the refunds without delay and was barred from reviewing sales records for excess tax reimbursement by the doctrine of res judicata. The Department responded that it had no ministerial duty to issue refunds without first determining whether Starbuzz collected excess tax reimbursement from its customers. To the contrary, the Department argued section 30361.5 required the review for excess tax reimbursement. According to the Department, that review was separate and distinct from the refund claims, and thus not barred by res judicata.

The trial court agreed with the Department and denied the petition. The trial court subsequently entered judgment in the Department's favor. This appeal timely followed.

## II. DISCUSSION

Starbuzz argues the trial court erred in denying the petition, because the Department has a ministerial duty to issue the refunds and was barred from conducting an excess reimbursement review by the doctrine of res judicata. We will begin our analysis with an overview of the Tobacco Products Tax Law. We will then consider whether the doctrine of res judicata applies.

*A.    Overview of Tobacco Products Tax Law*

The Tobacco Products Tax Law imposes an excise tax on the distribution of cigarettes and tobacco products in the state. (§§ 30101, 30123, 30131.2; see also § 30008, subds. (a) & (b) [defining "distribution" to include "[t]he sale of untaxed cigarettes or tobacco products in this state" and "[t]he use or consumption of untaxed cigarettes or tobacco products in this state"].) Excise taxes for tobacco products are based on the wholesale cost of such products, at rates determined by the Department. (§§ 30123, subd. (b), 30131.2, subd. (b).) The taxes "provide funding for local and state

5

programs, including health services, antismoking campaigns, cancer research, and education programs." (Bus. & Prof. Code, § 22970.1, subd. (a).)

Excise taxes are typically paid by distributors of cigarettes or tobacco products. (§§ 30101, 30108, subd. (d); see also § 30011, subd. (c) ["Distributor" includes "[e]very person who sells or accepts orders for cigarettes or tobacco products which are to be transported from a point outside this state to a consumer within this state"].) However, excise taxes may also be "paid by the user or consumer" (§ 30107) and collected by the distributor "at the time of making the sale or accepting the order" (§ 30108, subd. (a)). The difference becomes important where, as here, taxes have been paid on distributions later found to have been nontaxable. (See generally *Parmar v. Board of Equalization* (2011) 196 Cal.App.4th 705, 716 ["Only those persons who paid the disputed tax may recover their excess payments in a refund action"].)

As we have explained, the Office of Tax Appeals has determined that the shisha distributed by Starbuzz during the claim period was not a "tobacco product" within the meaning of section 30121, former subdivision (b), and therefore not taxable. The Department does not dispute this determination. Consequently, it is now undisputed that Starbuzz—or someone—paid taxes that were not required to be paid.

The Tobacco Products Tax Law addresses the overpayment of excise taxes in two places. (§§ 30361, 30361.5.) Section 30361 addresses the relatively straightforward situation in which an overpayment has occurred, and the Department need only determine how much was collected and from whom. The statute provides, in pertinent part: "If the department determines that any amount not required to be paid under this part has been paid by any person, the department shall set forth that fact in its records and certify the amount collected in excess of the amount legally due and the person from whom it was collected or by whom it was paid. The excess amount collected or paid shall be credited by the department on any amounts then due and payable from the person from whom the excess amount was collected or by whom it was paid under this part, and the balance

6

shall be refunded to the person, or the person's successors, administrators, or executors." (§ 30361.)

Section 30361.5 deals with the more complicated situation in which excise taxes are passed along to customers. In that situation, the distributor collects the excise tax from the customer and provides a receipt showing the amount collected. (§ 30108, subd. (b); Cal. Code of Regs., tit., 18, § 4092 [distributor must provide a receipt showing amount of tax collected and other information].) If the distribution is later deemed nontaxable, the distributor could theoretically receive reimbursement from the customer and a refund from the Department. To avoid that result, section 30361.5 provides: "When an amount represented by a person to a customer as constituting reimbursement for taxes upon the distribution of tobacco products pursuant to this part is computed upon an amount that is not taxable or is in excess of the tax amount and is actually paid by the customer to the person, the amount so paid shall be returned by the person to the customer upon notification by the State Board of Equalization or the customer that an excess has been ascertained. If the person fails or refuses to do so, the amount so paid, if knowingly or mistakenly computed by the person upon an amount that is not subject to the tax imposed by this part or that is in excess of the tax amount, shall be remitted by that person to this state. Those amounts remitted to the state by the person shall be credited by the board to any amounts due and payable from that customer that are subject to this part and that are based on the same activity, and the balance, if any, shall constitute an obligation due from the person to this state."

The Department argues section 30361.5 contemplates that any review of Starbuzz's sales records for the claim period for excess tax reimbursement take place before refunds are issued. Starbuzz counters that the Department had ample opportunity to raise the issue of excess tax reimbursement during the proceedings before the Office of Tax Appeals and is barred from doing so now by the doctrine of res judicata. We consider that question next.

7

*B.*	*Res Judicata Principles and Standard of Review*

"Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen Corp.*).) "Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' " (*Id.* at p. 897.) Res judicata, or claim preclusion, applies to adjudicatory administrative decisions (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1290) and tax litigation (*Commissioner v. Sunnen* (1948) 333 U.S. 591, 597-598 (*Sunnen*) [once a taxpayer's liability for a particular year is litigated, "a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year" (italics omitted)]; *Pope Estate Co. v. Johnson* (1941) 43 Cal.App.2d 170, 173-174 (*Pope Estate*)).

Claim preclusion arises if: "(1) the present action is based on the same cause of action as the prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding." (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 557.) The party asserting claim preclusion—here, Starbuzz—bears the burden of establishing each of these elements. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 529.) Our focus will be on the first element (whether the present action is based on the same cause of action as the prior proceeding), as the parties appear to agree that the second and third elements have been met.

The trial court's application of res judicata presents a question of law which we review de novo. (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.) Likewise, the trial court's interpretation of a statute—here,

8

various provisions of the Tobacco Products Tax Law—is also a question of law we review de novo. (*Blaser v. State Teachers' Retirement System* (2019) 37 Cal.App.5th 349, 364.)

C.      *Whether the Tax Refund Claims and Excess Tax Reimbursement Claims are Part of the Same Cause of Action*

The primary issue on appeal is whether the tax refund claims in the OTA proceedings and the excess tax reimbursement claims here are part of the same cause of action. We conclude they are not.

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' [Citation.] Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. "Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term." ' " (*Boeken v. Phillip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797-798.)

" '[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered.' " (*Mycogen Corp., supra*, 28 Cal.4th at p. 904.) " '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' " (*Boeken v. Phillip Morris USA, Inc., supra*, 48 Cal.4th at p. 798.) " 'The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." ' " (*Mycogen Corp., supra*, at p. 904.)

Starbuzz characterizes the primary right at issue in the OTA proceedings and here as follows: "In the claims it filed with the Board of Equalization, Starbuzz sought a refund of specific amounts for specific periods of time. The 'harm' for which Starbuzz sought redress was overpayment of taxes. Starbuzz was not simply seeking some type of abstract or declaratory relief as to whether its product was subject to the tobacco tax. Its refund claim was exactly that—a claim to recover specific monies in the (wrongful) possession of the state. Under the primary right doctrine, therefore, that was Starbuzz's 'cause of action.' The mandamus action alleged the exact same harm and sought the exact same relief—recovery of a refund of specific monies held by the state. Therefore, the same 'cause of action' was at issue in both the administrative proceedings, including the OTA appeal, and the mandamus proceedings." This characterization of the relevant primary right strikes us as overly general.

Although the OTA proceedings and instant action may both involve "overpayment of taxes," this will often be the case in tax cases, where taxpayers can be expected to say they paid too much, and the Department can be expected to say they paid too little. We think it is more helpful—and more consonant with controlling case law—to describe the primary right somewhat more narrowly. To that end, we believe the primary right at issue in the OTA proceedings was the right to be free from the imposition of excise taxes for distributions of products on which no such taxes were due. (*Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1300 ["In the parlance of the 'primary right theory,' those paying charges have a primary right to have the charges properly calculated and imposed each year" (italics omitted)].)[5] The corresponding duty of the Department was to require the payment of excise taxes for distributions of products on which taxes

---

[5] Again, the "sole issue" in the first OTA opinion was whether the shisha that Starbuzz distributed during the claim period was a "tobacco product" within the meaning of section 30121, former subdivision (b).

10

were due (those meeting the statutory definition of "tobacco products" under section 30121, former subdivision (b)), but not require the payment of taxes on distributions of products not meeting that definition. (*Ibid.*) The breach or delict of duty in the OTA proceedings lay in the Department requiring the payment of excise taxes for distributions on which no such taxes were due.

The primary right in the instant action is different. The primary right here is not the right to be free from the imposition of excise taxes for distributions of shisha during the claim period. That issue has already been decided in favor of Starbuzz, and the Department does not propose to relitigate it. The primary right here is the right to receive refunds without the delay attendant to an excess tax reimbursement review. It is true, as Starbuzz observes, that the right to receive refunds stems from the OTA proceedings and involves the same species of excise tax. But what matters, for res judicata purposes, is not whether the two actions share common factual predicates or overlapping procedural histories, but whether they constitute the same cause of action. And here, the causes of action are not the same.

Again, the cause of action consists of a primary right of the plaintiff, a corresponding duty of the defendant, and a wrongful act constituting breach of that duty by the defendant. (*Mycogen Corp., supra*, 28 Cal.4th at p. 904.) Where before, the primary right was the right to be free of excise taxes for nontaxable distributions, here, the primary right is the right to receive the resulting refunds without the necessity of an excess tax reimbursement review. These seem to us to be distinct primary rights, in much the same way as "the right to have contractual obligations performed is distinct from the right to be free from tortious behavior preventing collection of a judgment." (*Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.* (1994) 29 Cal.App.4th 1828, 1837 [different rights were at stake where the first suit involved proof of a breach of contract by shareholders and the second suit involved proof they fraudulently conveyed assets to deprive plaintiff of the value of his judgment].) We need not rely on analogy, however, as

11

the OTA proceedings and the instant action also involve a different set of duties by the Department.

Balanced against Starbuzz's right to receive the refunds in the instant action is the Department's duty to ensure that excess reimbursements charged to customers are returned to those customers or remitted to the state. (§ 30361.5.) Unlike the primary right in the OTA proceedings, where the Department's duty ran primarily to Starbuzz, the Department here has an obligation to any customers that paid the excise taxes. (*Ibid*.) The nature of that obligation can be understood by reference to section 6901.5 of the Sales and Use Tax Law (§ 6001 et seq.), on which section 30361.5 was modeled. (Stats. 2005, ch. 512, § 6.)

Our Supreme Court has discussed the operation of section 6901.5 (and its predecessor, former section 6054.5) on several occasions. (See *Decorative Carpets, Inc. v. State Board of Equalization* (1962) 58 Cal.2d 252, 254-255; *Javor v. State Board of Equalization* (1974) 12 Cal.3d 790, 798-799; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1107-1109 (*Loeffler*); *McClain v. Sav-On Drugs* (2019) 6 Cal.5th 951, 960-961.) These cases make clear that customers have an equitable interest in excess sales tax reimbursements, and the Department has a "duty to protect the integrity of the sales tax" by ensuring that those customers receive any excesses actually paid by them. (*Javor, supra*, at p. 802.) The sales tax cases also establish that the Department's duty comes into existence "once it has been, in the words of the statute, 'ascertained' that an excess has been charged." (*Loeffler, supra*, at p. 1120; see *ibid*. ["Under the procedures established by the code, the Board could 'ascertain' whether excess reimbursement was charged during an audit [citation], a deficiency determination proceeding [citation], or Board consideration of a taxpayer's claim for refund"].) These observations inform our interpretation of section 30361.5 and distinguish the instant action from *Pope Estate Company v. Johnson* (1941) 43 Cal.App.2d 170 (*Pope Estate*), on which Starbuzz relies. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1269, fn. 6 ["identical language appearing in

separate statutory provisions should receive the same interpretation when the statutes cover the same or analogous subject matter"].)

In *Pope Estate*, a corporate taxpayer paid all taxes said to be due for the 1933 tax year, including two additional levies, one of which was paid under protest. (*Pope Estate, supra*, 43 Cal.App.2d at p. 171.) The taxpayer brought a refund action for the amount paid under protest and won a partial judgment. (*Id.* at pp. 171-172.) The taxpayer then made demand for payment. (*Id.* at p. 172.) The state treasurer refused to pay the judgment on the ground that the tax commissioner had re-examined the taxpayer's return for the tax year and determined additional taxes were owed for that same year. (*Ibid.*) The taxpayer refused to accept any deduction from the judgment and brought mandamus proceedings to compel payment. (*Ibid.*) The trial court overruled the state treasurer's demurrer, and the state treasurer appealed, arguing "when a taxpayer secures a final judgment for a refund of a portion of its franchise tax paid under protest, the state may re-examine the return for that and other years, and, if it finds that a further tax is due the state, may deduct this amount from the judgment." (*Ibid.*) The Court of Appeal rejected the state treasurer's argument, finding res judicata barred the tax commissioner's attempt to collect additional taxes following the judgment. (*Id.* at p. 173.)

The court explained: "When the taxpayer . . .brought the action in the superior court for a refund of a portion of its 1933 tax, it put into issue the question as to whether a refund for the year 1933 was due to it. This placed in issue the question as to the total amount due from the taxpayer for the year 1933. The state, in that action could have raised the defense that, although the . . . claim for refund was proper, there were other items which the taxpayer had omitted from its return for that year, which, if included, would show that the taxpayer had underpaid its tax . . . . Therefore, when the court adjudicated that the taxpayer had overpaid its 1933 tax in an amount in excess of $3,000, it was in effect adjudicating that no other sum was due from the taxpayer." (*Pope Estate, supra*, 43 Cal.App.2d at p. 173.)

The court elaborated:  "A suit for a recovery of the whole or a portion of a tax for a particular year throws open all questions relating to the same tax year.  Neither the tax collecting authorities nor the taxpayer are at liberty to split up the question and prosecute in the courts the question as to liability for that year piecemeal.  The rule is quite absolute in its character and applies so as to prevent a second action in the courts involving a particular year's liability even though the facts upon which the second suit rests occurred after the first was decided."  (*Pope Estate, supra*, 43 Cal.App.2d at p. 174.)

Starbuzz argues our case is "materially indistinguishable" from *Pope Estate*, which remains good law.  (See *State Board of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 641-642 [discussing *Pope Estate* in the context of the full payment rule embodied in Cal. Const., art XIII, § 32].)  According to Starbuzz, the OTA proceedings threw open all questions regarding the claim period, including any questions relating to excess tax reimbursements.  From this premise, Starbuzz reasons the Department was required to raise the question of excess tax reimbursements in the OTA proceedings and is barred by *Pope Estate* from doing so now.  As previously suggested, we think *Pope Estate* is distinguishable.

Unlike the present situation, each of the successive actions in *Pope Estate* was concerned with the taxpayer's liability viz. the taxing authority.  As noted, the state treasurer refused to pay the refund on the ground the taxpayer owed additional taxes for the year, and the court concluded the tax commissioner could not deduct the taxes from the refund amount because the taxpayer's tax liability for the year had been settled in the judgment.  (*Pope Estate, supra*, 43 Cal.App.2d at pp. 171-172, 174.)  The court explained:  "The final judgment in the refund action amounts to a final adjudication, conclusive on the state and taxpayer alike, that no further tax is due from the taxpayer for that year, and that the taxpayer is not entitled to any further refund for that year."  (*Id.* at p. 176.)

Here, by contrast, only the OTA proceedings were concerned with questions

14

relating to Starbuzz's tax liability for the claim period. As discussed, those questions have now been answered, and the Department does not propose to reopen them. The current case is not concerned with any additional tax liability between Starbuzz and the Department. We are, instead, concerned here with excess reimbursement amounts that may have been paid by customers (not Starbuzz). Those amounts are not additional taxes for the claim period; they are amounts "in some sense held in constructive trust" by Starbuzz (*Loeffler, supra*, 58 Cal.4th at p. 1111), which can either be returned to customers or remitted to the Department. (§ 30361.5.) That section 30361.5 prevents Starbuzz from retaining any excess reimbursement amounts actually paid by customers does not mean the Department, in ensuring compliance with the statute, has undertaken to levy any new or additional tax for the claim period.

*Pope Estate* is distinguishable for another reason. Both sets of proceedings in *Pope Estate* dealt with franchise taxes which, like personal income taxes, are based on a system of annual accounting in which each tax year "is the origin of a new liability and of a separate cause of action." (*Sunnen, supra*, 333 U.S. at p. 598; see *Pope Estate, supra*, 43 Cal.App.2d at p. 171; see also *Superior Oil Co. v. Franchise Tax Board* (1963) 60 Cal.2d 406, 407 ["The franchise tax is impressed annually on corporations for the privilege of exercising the corporate franchise within California"].) While the refund claims in the OTA proceedings dealt with Starbuzz's tax liability for the tax years represented by the claim period, each of which constituted a separate cause of action, as to which the OTA opinions would be res judicata in subsequent proceedings involving the same claim and claim period, the instant action does not. (See, e.g., *Sunnen, supra*, at p. 598 ["if a claim of liability . . . relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year" (italics omitted)].)

As we have explained, the instant action does not involve the same claim or cause of action. The instant action addresses the obligation to return or remit excess

15

reimbursement amounts. And that obligation does not arise until "an excess has been ascertained." (§ 30361.5; accord *Loeffler, supra*, 58 Cal.4th at pp. 1119-1120 [interpreting nearly identical statutory language in § 6901.5, and observing that excesses can be ascertained during audits, deficiency determination proceedings, or consideration of refund claims].) Here, the excess was only ascertained by means of the OTA proceedings. That being so, the Department could not seek any excess reimbursement amounts in the OTA proceedings themselves, as no excess had yet been ascertained. It follows that the OTA proceedings do not bar the Department from seeking the return or remission of excess reimbursement amounts now. (See *Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 495 ["Ordinarily, res judicata principles would not bar a subsequent claim if the matter could not have been raised in the earlier action"]; see also *City of Downey v. Johnson* (1978) 79 Cal.App.3d 970, 974-975 [plaintiff in prior eminent domain proceeding was not barred from bringing action to recover reimbursement for amounts "in excess of the amount to which he is entitled as finally determined in the eminent domain proceeding," as that right did not arise until the judgment fixing the excess amount as "finally determined"].) It also follows that the Department was not required to assert the right to conduct an excess reimbursement review under section 30361.5 as affirmative defense in the OTA proceedings, as Starbuzz contends. The trial court properly denied the petition.[6]

---

[6] Starbuzz asks that we take judicial notice of a portion of the Department's audit manual. We deny the request for two reasons. First, we find the audit manual irrelevant and deny the request on that ground. (*People ex. rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 ["any matter to be judicially noticed must be relevant to a material issue"].) Second, the audit manual was not provided to the trial court, and we ordinarily do not take judicial notice of such matters. (See, e.g., *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [absent exceptional circumstances, "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court"].)

## III.  DISPOSITION

The judgment is affirmed.  The Department is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

EARL, P. J.

/S/

FEINBERG, J.